**CABLE SCIENCE CORPORATION,**
**Plaintiff–Appellant,**

v.

**ROCHDALE VILLAGE, INC.,**
**Defendant–Appellee.**

**No. 69, Docket 90–7283.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 28, 1990.

Decided Nov. 29, 1990.

Jeffrey Craig Miller (Miller & Korzenik, New York City, of counsel), for plaintiff-appellant.

Kevin J. McGill (Carlyle M. Dunaway, Jr., Suzanne B. Seiden, Clifton Budd & DeMaria, New York City, of counsel), for defendant-appellee.

Before FEINBERG and CARDAMONE, Circuit Judges, and CABRANES, District Judge.*

CARDAMONE, Circuit Judge:

The issue raised on this appeal from a grant of summary judgment is whether the district court in construing a contract, by ascertaining the intent of the parties, resolved disputed issues instead of determining under Rule 56(c) whether they existed.

---

* Honorable José A. Cabranes, United States District Court for the District of Connecticut, sitting by designation.

What was said and what was done by the parties is not in dispute, but the inferences that may reasonably be drawn from those actions is far from clear. It is of course the parties' intent that governs what the parties meant. But in this case the district court, under the guise of interpreting the meaning to be ascribed to the parties' words and deeds, determined what was intended. Where reasonable minds could differ as to inferences to be drawn regarding intent, material fact questions are presented precluding summary judgment.

## FACTS

Rochdale Village, a limited profit housing cooperative incorporated under Article II of the Private Housing Finance Law of New York, operates a housing cooperative in Queens, New York consisting of 5,860 apartments. On July 20, 1988 it entered into a written contract with Cable Science Corporation of Florida to obtain cable television service to all of the apartments. The contract provided that "[a]s compensation for the provision of BASIC SERVICE ... to all dwelling units in Rochdale Village, ROCHDALE agrees to pay CABLE SCIENCE $40,961.40 as a monthly service fee (based upon 5,680 apartment units at $6.99 per unit)." Attachment B1 specified that "the individual cooperators of Rochdale Village shall not be charged for the installation or Basic service under this contract," but that they could purchase additional services.

Monthly bills for the basic service were to be sent to Rochdale, and Cable Science agreed to pay Rochdale 75 cents per month for each Rochdale household signing up for additional or premium services. The contract stated that the agreement was "subject to the approval of the Commissioner of the New York State Division of Housing and Community Renewal and shall be deemed executory until the date of such approval." The contract further stated that "[t]his Agreement constitutes the entire understanding between the parties with respect to the subject matter herein, and shall not be modified except by written instrument, signed by the parties hereto."

Rochdale warranted it had the legal right and authority to enter into the agreement.

Rochdale Village is regulated by the Commissioner of the New York State Division of Housing and Community Renewal (Commissioner or State Division) and is governed by a Board of Directors. New York housing regulations require State Division approval of all expenditures by Rochdale in excess of $10,000. N.Y. Hous. & Comm. Renewal Regs. §§ 1728–1.3, 1728–4.1. Rochdale submitted the subject contract to the Commissioner, stating it would pass the monthly $6.99 charge on to each tenant. On September 19, 1988 the Commissioner disapproved the contract, primarily because the additional $6.99 charge would be an increase in the tenants' carrying costs, but made suggestions for amendments to the contract that would make it acceptable to the State Division.

On October 11, 1988 Cable Science and the President of Rochdale's Board signed a written modification of the contract addressing all of the State Division's suggested modifications. Those modifications slightly lowered the amount Rochdale agreed to pay, but did not otherwise change the language in the paragraph governing charges and subscriber rates. The modifications did not address, for example, whether Rochdale was to pass on the monthly charge to the tenants or pay the monthly charge from its cooperative coffers. The contract was resubmitted to the State Division with the understanding, as evidenced by the affidavit of Rochdale's current president, that Rochdale would pay the $40,000 monthly charges itself. On November 1 the State Division approved the July 20, 1988 contract, which included the amendments dated October 11, 1988. The approval was subject to two amendments to be made to the contract as well as to Rochdale's amendment of its budget "to reflect the $480,000 expenditure increase in accordance with the 1987 Workout Agreement and Rochdale's policies and procedures."

Rochdale's Board of Directors had previously entered into the 1987 Workout Agreement with the State of New York

and the State Housing Finance Agency—holder of a large mortgage on the Rochdale property—because Rochdale had fallen $35 million in arrears on its mortgage payments. The Workout Agreement committed Rochdale to strict budget limits, required that all signatories approve significant new, unbudgeted items, and that Rochdale have sufficient surplus income for those items. On November 2, 1988 Rochdale sent Cable Science the State Division's approval of the contract and Cable Science prepared an additional amendment to the agreement addressing the first two State Division conditions set forth in its November 1 letter. Rochdale never signed this additional amendment.

In mid-November a new president took office on the Rochdale Board and wrote the State Division on November 28 seeking clarification of the agency's November 1 approval. On December 19 the Rochdale Board voted to reject the Cable Science contract, and it also voted not to appropriate the $480,000 per year called for under the contract. On December 27—eight days after the Board voted to reject the contract—the State Division replied to the Board's November 28 letter seeking clarification as follows:

The 1987 Workout Agreement and [the State Division] regulations require expenditures of this magnitude to be included in Rochdale's budget. Rochdale's long standing policies and procedures require Board approval of expenditures over $10,000. It is our position that approval of this expenditure must be made by the Rochdale Board. The Board's original approval of the contract, did not authorize the expenditure nor amend the budget and therefore consideration by the Board is required.

The Board has the duty and responsibility to determine if this is an appropriate housing company expenditure and, more importantly, if funds are available to cover this significant expense. The Board could of course determine that funds are not available.

The contract cannot be considered approved by [the State Division] until the necessary budget modification is passed and submitted to [it].

## PRIOR PROCEEDINGS

On January 27, 1989 Cable Science sued Rochdale Village for breach of contract. Rochdale moved for summary judgment. Cable Science cross-moved for the same relief and opposed Rochdale's motion with a statement of material facts in dispute. The district court granted Rochdale's motion for summary judgment, stating that

Admittedly, the State Division has not approved the Amended Agreement.

Of course, where the cooperation of a promisee is necessary to satisfy a condition precedent to performance of a contract, such as obtaining a third party's approval, there is an implied obligation to give reasonable cooperation ... No doubt Rochdale would have been required to amend the budget had that been a mere ministerial act ... But the State Division did not so regard it. Nor does this court.

The State Division made clear that it would not approve the Amended Agreement unless the Rochdale Board of Directors, which had never approved payment of the charges by Rochdale itself, focused on whether such payment was wise and allocated funds accordingly. The Board then fulfilled its duty to consider the matter and decided not to amend the budget."

. . . .

While Cable Science says that Rochdale had ample funds to pay $480,000, this court may not substitute its judgment for that of the Board. [citations omitted].

On October 12, 1989 Cable Science filed a Fed.R.Civ.P. 59(e) motion for reconsideration and vacatur of the October 2 grant of summary judgment in favor of Rochdale alleging that it had discovered new evidence and that the Rochdale Board never made a finding that it did not have enough funds to fulfill the Cable Science contract. The district court refused to vacate its October 2 order, and in its opinion denying the vacatur stated:

151

Cable Science interprets the court's memorandum and opinion as resting on a conclusion of fact that the Rochdale Board, when first approving the contract with Cable Science, did so only on the understanding that the monies for payment would come from direct charge-backs to Rochdale's tenant-cooperators, rather than Rochdale's existing budget. The court drew this conclusion from the statements of Rochdale's current president, David McCarthy, and a State Division official responsible for supervising Rochdale, that it was the understanding of all parties that Rochdale intended to pass the contract charges along to each tenant-cooperator. The State Division in disapproving the contract explicitly referred to this arrangement, which is not in the body of the contract itself.

The district judge stated that Cable Science's allegations that the Board intended to pay the charges itself if the State Division refused to approve the charge-backs "is insufficient to demonstrate that Rochdale acted in bad faith in not allocating the contract price in its budget." It also concluded the Rochdale Board was unable to make a binding contract in the absence of State Division approval, stating that "[t]he Rochdale Board never contracted away its fiduciary discretion over its budget. That the State Division might condition its approval on terms Rochdale would be unable or unwilling to fulfill was a hazard Cable Science accepted.... This court cannot say that a duty of good faith cooperation with Cable Science compelled the Rochdale Board to amend its budget to satisfy the State Division."

From the grant of summary judgment in favor of Rochdale and the denial of its Rule 59(e) motion for reconsideration, Cable Science appeals. We reverse.

### DISCUSSION

It is well settled that a court should grant a motion for summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988). Summary judgment is proper when reasonable minds could not differ as to the import of the evidence before the court. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to "the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *William C. Atwater & Co. v. Panama R.R. Co.,* 246 N.Y. 519, 524, 159 N.E. 418 (1927); *see also National Union Fire Insurance Co. v. Turtur,* 892 F.2d 199, 205 (2d Cir. 1989) ("Questions of intent, we note, are usually inappropriate for disposition on summary judgment").

■ Because in a contract dispute, intent is all, the language used must be examined first to see if it is ambiguous. *See Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 27 (2d Cir.1988); *Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N.Y.2d 456, 460, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957). Here both parties moved for summary judgment and also took the position that the language of the contract was unambiguous. Nonetheless, in order for a district court to grant summary judgment in such a case, there may not be any genuine issue regarding the inferences to be drawn from the language. Hence, the inferences to be drawn from the language used may not be reasonably susceptible to having more than one meaning ascribed to them. *See Schwabenbauer v. Board of Education of Olean,* 667 F.2d 305, 313 (2d Cir.1981). It is only where the language *and* the inferences to be drawn from it are unambiguous that a district court may construe the contract as a matter of law and grant summary judgment accordingly. *American Home Assurance Co. v. Baltimore Gas & Elec. Co.,* 845 F.2d 48, 50–51 (2d Cir.1988).

■ Here, the district court found, as it stated, that Rochdale and Cable Science intended to pass on the basic service charges to the tenants, even though nothing in the contract evidences any such intent and, in fact, there is contrary evidence from Rochdale's former president. Rochdale, in fact, did not insist that the contract contain an explicit written provision conditioning its duty to perform upon its ability to pass on charges to the tenants, and the contract itself provided that "[t]his Agreement constitutes the entire understanding between the parties ... and shall not be modified except by written instrument...." The district judge also stated he "drew this conclusion from the statements of Rochdale's current president ... and a State Division official...." This finding followed from inferences drawn from the language in the proposed contract reasonably susceptible to a different meaning. Thus, the inferences create genuine issues of material fact, making summary judgment an inappropriate remedy.

■ The intent of the parties respecting the alleged charge-backs would not be a material fact were the district court correct that Rochdale had no authority to enter into a binding contract, absent the State Division's approval. The apparent premise of the district court was that such approval was lacking. It is true that in New York "where there is a lack of authority on the part of agents of a municipal corporation to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed." *Lutzken v. City of Rochester,* 7 A.D.2d 498, 501, 184 N.Y.S.2d 483 (1959). And there is no doubt here that the Commissioner's approval was legally required. But, this does not resolve the material issue of whether the State Division's November 1 letter constituted approval. This, too, appears, therefore, to be a genuine material factual issue that the trial court should not have decided.

Even if the legal effect of the Commissioner's November 1 letter were considered a question of law to be decided by the court rather than the trier of facts, the question

still remains whether—once the State Division had spelled out the conditions under which its approval would be given—Rochdale made a good faith effort to comply with the contract's requirement that Rochdale obtain the Commission's approval. Whether or not a party has made a good faith effort to comply with the terms of a contract is a fact question. *Cf. Empire Volkswagen, Inc. v. World–Wide Volkswagen Corp.,* 627 F.Supp. 1202, 1210 (S.D. N.Y.1986) (whether manufacturer failed to act in good faith in complying with franchise terms in curtailing car shipments involved disputed issues of fact), *aff'd,* 814 F.2d 90 (2d Cir.1987).

The trial court further held that it could not interpret the contract as requiring Rochdale to amend its budget because it could not substitute its judgment for that of the Board. This ruling avoids the rather distinct possibility that Rochdale's Board had already exercised that judgment when it agreed to the original contract on July 20, 1988. This possibility presents a factual question of the Board's intent under the circumstances and in light of the purposes it intended to accomplish by entering into the Cable contract. Finally, Rochdale contends it did not have sufficient funds to pay the amount called for in the contract; Cable Science's response that Rochdale did have enough money to pay the contract also raises a genuine issue of material fact, if a binding contract is found to exist.

In view of the numerous unresolved genuine issues of material fact, we need not address Cable Science's allegation that, because it had been unable to obtain discovery, summary judgment was improperly granted. It is worth observing, however, that summary judgment is generally disfavored when the party opposing the motion has not obtained discovery. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980); *Long Island Lighting Co. v. Barbash,* 779 F.2d 793, 795 (2d Cir.1985).

CONCLUSION

For the above stated reasons, the judgment of the district court dated September

25, 1989 and its order of March 5, 1990 are reversed and the matter remanded to it for trial.