**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
Plaintiff,

v.

**J.K. CHRYSLER PLYMOUTH CORP., Defendant.**

No. CV–89–0718.

United States District Court,
E.D. New York.

Oct. 15, 1991.

Cynthia Corbet, Strook, Strook & Lavan, New York City, for plaintiff.

Jeffrey P. Brodsky, Ginsberg, Katsorhis & Fedrizzi, Flushing, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff General Accident Insurance Company of America ("General Accident") brought this action against defendant J.K. Chrysler Plymouth Corp. ("J.K. Chrysler") to recover unpaid premiums on two insurance policies that the plaintiff had provided for the defendant between 1986 and 1988. Plaintiff has moved for partial summary judgment, and, for the reasons stated below, that motion is granted.

### FACTS

The facts of this case, as set forth by the plaintiff in its statement pursuant to Rule 3(g) of the Local Rules, are uncontroverted by the defendant (which has filed no opposition papers with respect to this motion). Under the terms of Rule 3(g) itself, then, the facts set forth by the plaintiff "will be deemed admitted." *See, e.g., Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984) (plaintiff, as non-moving party, failed to file Rule 3(g) statement; facts set forth by defendant were thus "properly deemed admitted").

General Accident is a Pennsylvania Insurance firm authorized to do business in the State of New York. J.K. Chrysler is a New York corporation engaged in the sale of automobiles. General Accident, as an insurer doing business in New York, participates in the New York Automobile Insurance Plan ("AIP"). Pursuant to AIP, General Accident accepts customers from a risk pool who, because of their driving records, cannot otherwise obtain insurance.

AIP designated General Accident as the insurer for J.K. Chrysler, a member of the risk pool, for the period of May 1986 to May 1987. General Accident then issued Policy No. GP–49–25–42, effective May 9, 1986, to J.K. Chrysler, and it billed J.K. Chrysler for an *estimated* premium of $13,020.00. J.K. Chrysler accepted this policy and paid the estimated premium. That policy, however, stated that the estimated premium was "based on the exposures you told us you would have when this policy began." It continued:

We will compute your final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and you will be billed for the bal-

ance, if any. If the estimated total premium exceeds the final premium due you will get a refund. To determine your final premium due we may examine your records at any time during the period of coverage and up to three years afterward.

This provision appears to represent a standard practice in the insurance industry: Only *after* the termination of a policy period can an insurer accurately determine the precise number of an insured's employees and thus compute the precise amount of the premium. *See* Affidavit of Shirley Wallace ¶ 2.

Subsequently, a renewal policy was issued for the term of May 1987 to May 1988; this renewal policy contained the same terms and conditions as the first policy. General Accident billed J.K. Chrysler for an estimated premium of $12,942.00 on the renewal policy, and J.K. Chrysler paid the estimated premium.

In July of 1987, General Accident audited the books and records of J.K. Chrysler. A second audit was conducted by Kera, Weiner & Co.—a firm chosen by counsel for J.K. Chrysler to conduct the audit—in March of 1990. Kera, Weiner determined the identity and number of J.K. Chrysler employees; it also determined the duration of their employment at J.K. Chrysler and other information relevant to setting the applicable premium. Although J.K. Chrysler had initially represented to General Accident that it had only four employees, the Kera, Weiner audit revealed at least 75 employees. *See* Plaintiff's Exhibit G. No determination was made as to the employment status of two individuals—John A. Koufakis, Jr. and Michael Koufakis.

The results of the Kera, Weiner audit in conjunction with formulae mandated by AIP determine a final premium of $85,079.00 for the first policy issued to J.K. Chrysler and a final premium of $74,663.00 for the renewal policy. It should be noted that neither of these computations includes the possibility that John A. Koufakis, Jr. and Michael Koufakis were employed by J.K. Chrysler during the periods for which the policies were in place.

To date, however, J.K. Chrysler has only paid $13,020.00 on the first policy and $12,942.00 on the renewal policy. Thus, General Accident calculates the balance due—excluding John A. Koufakis, Jr. and Michael Koufakis—to be $72,059.00 on the first policy and $61,721.00 on the renewal policy.

General Accident now moves for summary judgment on the liability of J.K. Chrysler for the balances due on the first and the renewal policies; General Accident also seeks to set down for trial the questions of whether John A. Koufakis, Jr. and Michael Koufakis were in fact employees of J.K. Chrysler during the policy periods. If they had been employees, General Accident would, of course, seek any additional premium amounts due on the policies by virtue of their employment status.

The defendant J.K. Chrysler has not responded to this motion for partial summary judgment. It did raise five affirmative defenses, however, in its verified answer: estoppel; waiver; laches; the Statute of Frauds; and "fraud, misrepresentation, and unconscionability." Plaintiff's Exhibit B. The defendant has submitted no argument to develop or to support these bare assertions.

## DISCUSSION

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." There is in this case no "genuine issue as to any material fact" on that part of its claim for which General Accident seeks summary judgment: As noted above, J.K. Chrysler has failed to submit a Rule 3(g) statement to set forth "the material facts as to which it ... contend[s] that there exists a genuine issue to be tried." The sanction for such a failure is deemed admission of the facts as presented by the moving party. Furthermore, Federal Rule of Civil Procedure 56(e) requires J.K. Chrysler to go beyond its pleadings in order to defend against the motion for summary judgment:

When a motion for summary judgment is made and supported as provided in the rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.' "). J.K. Chrysler has, however, submitted no papers beyond its initial answer. Thus, because J.K. Chrysler has not even endeavored to set forth such an issue of material fact, the mandates of Rule 3(g), of Rule 56(e), and of *Celotex* require that summary judgment, as a matter of law, "be rendered forthwith."

As to the applicable substantive law, it is a principle almost too fundamental to require recitation that the unambiguous language of a contract will be construed in a manner consistent with its plain meaning. This rule is all the more true in the procedural posture of a motion for summary judgment: The Second Circuit has clearly stated that: "In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning...." *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir. 1990). The task of the court in such a case is to examine both the language and the inferences to be drawn from that language to determine whether they are clear: "It is only where the language *and* the inferences to be drawn from it are unambiguous that a district court may construe the contract as a matter of law and grant summary judgment accordingly." *Id.*

In this regard, the pillars of Anglo–American law have expressed considerable doubt that any document may be wholly free of ambiguity. It has been suggested that there is no "lawyer's Paradise [in which] all words have a fixed, precisely ascertained meaning, ... and where, if the writer has been careful, a lawyer, having a document referred to him may sit in his chair, inspect the text, and answer all questions without raising his eyes." J. Thayer, A Preliminary Treatise on the Law of Evidence 428–9 (1898). And, to the same effect, the great skeptic observed: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918) (Holmes, J.).

Against the weight of this authority, it is not suggested that the insurance contract in this case constitutes a "lawyer's Paradise" with words of "crystal, transparent and unchanged." Rather, it is noted that the plaintiff submits an interpretation of the contract wholly consonant with the plain meaning of its language and that the defendant does not contest this construction. No reasonable inference has been suggested that would render ambiguous the transparent language of the policy. Further, under this interpretation of the contract, the rights and duties of the parties are clear: General Accident contracted for the right to inspect the books of J.K. Chrysler and to reassess the estimated premium on the basis of the ultimate number of the J.K. Chrysler employees. Now that it has exercised this right under the contract, General Accident seeks to enforce a second and thus to collect the balance of the final premium for each of the two insurance policies. The right of General Accident to receive this sum, and the corresponding obligation of J.K. Chrysler to remit it, could not be more clearly set forth in the policies. Accordingly, General Accident is entitled to judgment as a matter of law.

### CONCLUSION

For the foregoing reasons, the motion of General Accident for partial summary judgment is granted. The remaining is-

sues in this case—that is, the employment status of John A. Koufakis, Jr. and of Michael Koufakis as well as any additional premium amount due by reason of their employment—are preserved for trial.

SO ORDERED.