Elizabeth L. HENLEY, Plaintiff,

v.

The FOOD & DRUG ADMINISTRATION (DEPARTMENT OF HEALTH & HUMAN SERVICES), the Commissioner of Food and Drugs, Dr. David Kessler (or His Successor), and the United States, Defendants.

No. CV 93–5389.

United States District Court, E.D. New York.

Jan. 17, 1995.

Elizabeth L. Henley, plaintiff pro se.

Janet Reno, Atty. Gen. of the U.S., Dept. of Justice, Washington, DC by Frank W. Hunger, Asst. Atty. Gen., Civ. Div., Douglas Ross, Trial Atty., Office of Consumer Litigation, Margaret Jane Porter, Chief Counsel U.S. Food & Drug Admin., Karen E. Schifter, Ass't Chief Counsel U.S. Food & Drug Admin., and Zachary W. Carter, U.S. Atty., E.D.N.Y., Brooklyn, NY by Sarah J. Lum, Asst. U.S. Atty., for the Government.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This is an action for review of a decision made by the United States Food and Drug Administration (the "FDA") and its Commissioner. Judicial review of the FDA's decision is authorized by the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701–706. The plaintiff *pro se,* Elizabeth L. Henley, filed the Complaint on or about November 26, 1993. On September 27, 1994, following a pre-motion conference, the Court granted the government leave to move for summary judgment. The government's motion pursuant to Fed.R.Civ.P. 56 is now before the Court, as is a cross motion for summary judgment by the plaintiff.

### BACKGROUND

This lawsuit is based the FDA's denial of a citizen petition filed by the plaintiff in February, 1992, and on the FDA's subsequent reconsideration and affirmation of that denial. The Complaint seeks judicial review of the FDA's decisions and requests that the Court compel the FDA to grant the plaintiff's petition and the action that the petition sought. The regulations governing citizen petitions to federal agencies are discussed below.

The plaintiff's petitions challenged an FDA rule regarding the labeling of oral contraceptives. Authority for determination of labeling for oral contraceptives is granted to the FDA by Congress in the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* at §§ 352, 355. Specifically, the plaintiff sought to have the FDA include a warning regarding "the fact that estrogen, a component of oral contraceptives, has been shown to produce cancer in laboratory animals and may cause cancer in humans." *See Compl.* ¶ 8. The Complaint seeks, among other things, an order that: 1) sets aside the defendants' denial of the plaintiff's petition; 2) compels the defendants to grant the plaintiff's petition; and 3) mandates "disclosure of the fact that estrogen, a component of oral contraceptives, is known to cause cancer in animals and may cause cancer in humans. . . ."

In February of 1992, the plaintiff filed a citizen's petition with the FDA pursuant to 21 C.F.R. § 10.30. The petition requested that oral contraceptives be required to carry one of the following warnings: 1) "WARNING: ESTROGEN, A COMPONENT OF ORAL CONTRACEPTIVES HAS BEEN

SHOWN TO CAUSE BREAST CANCER AND OTHER CANCERS IN ANIMALS AND MAY CAUSE CANCER IN HUMANS. Read the enclosed pamphlet addressing this and other risks before use;" 2) "WARNING: ESTROGEN, A COMPONENT OF ORAL CONTRACEPTIVES HAS BEEN SHOWN TO CAUSE CANCER IN ANIMALS WHICH SHOWING JUSTIFIES THE INFERENCE THAT ESTROGEN MAY CAUSE CANCER IN HUMANS. Read enclosed pamphlet before use;" or 3) "WARNING: ESTROGEN, A COMPONENT OF ORAL CONTRACEPTIVES, HAS BEEN SHOWN TO CAUSE CANCER IN ANIMALS. Read enclosed pamphlet before use." The plaintiff urged in the petition that the warning be printed on the outside of the package containing the oral contraceptives, rather than on a package insert. The petition also asserted that women have a right to know that "a component of the drug has been shown to cause cancer in animals and may cause cancer in humans."

Prior to March of 1989, labeling for oral contraceptives did require a warning in the package insert stating that "... estrogens have been shown to cause cancer in animals, which showing justifies the inference that estrogens may cause cancer in humans...." 21 C.F.R. § 310.501 (1989). In 1989, after notice and comment proceedings, the FDA revised the rule regarding package inserts for oral contraceptives so that no specific wording was required. The Supplementary Information to the FDA's final rule states that this change was made to provide flexibility so that new information on the risks and benefits of the drug could be included in an ongoing basis without engaging in the notice and comment rulemaking procedure to change the precise wording of the information. See 54 Fed.Reg. 22,585–88 (1989).

The plaintiff's citizen petition alleged that the amended labeling requirements are inadequate because 1) it is no longer required that oral contraceptives carry any warning regarding risk of cancer from estrogen; 2) potential consumers would want to know the information proposed in the petition; 3) the regulations do not reflect scientific literature regarding the relationship between oral contraceptive use and breast cancer; and 4) the method in which the information is conveyed (via package inserts) is not reasonably calculated to reach the consumer.

The FDA denied Ms. Henley's petition by letter dated October 7, 1992. This letter stated, among other things, that "current scientific information no longer supports the conclusion that estrogen has been shown to cause cancer in animals, and therefore, by inference, in humans." Thereafter, on October 31, 1992, the plaintiff filed a petition for reconsideration with the FDA. She argued that animal studies did establish a causal link between estrogen and cancer in animals. The FDA reconsidered and responded by letter of September 30, 1993 by affirming is prior denial of the plaintiff's petition. In that letter the FDA stated that studies conducted in humans failed to reveal an increased risk of cancer caused by estrogen use. The FDA further stated that although the plaintiff was correct that studies of animals have revealed a causal connection between estrogen use and cancer in animals, those studies have little value in predicting a relationship between cancer and estrogen use by humans.

## DISCUSSION

### I. The summary judgment standard

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren,* 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the nonmovant must come forward with specific facts showing that a genuine issue for trial exists. *See Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *see also National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Western World,* 922 F.2d at 121. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See United National,* 988 F.2d at 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution". *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

In this case, the parties do not dispute the facts with regard to the administrative record of the citizen petition that forms the basis of this lawsuit. Each party urges the Court that the applicable law requires summary judgment in its favor.

## II. *Rulemaking pursuant to the APA*

### A. Informal rulemaking

The APA provides for two methods by which federal agencies may promulgate regulations, namely "notice and comment" and "adjudication." Section 553 of the APA sets forth the procedure for informal rule making by agencies, referred to as the "notice and comment" procedure. Under Section 553, agencies are required to 1) publish a general

notice of proposed rulemaking in the Federal Register; 2) receive and consider written commentary on the matter, with or without oral presentations; and 3) issue a general statement of the basis and purpose of rules adopted following this procedure.

Agency decisions made pursuant to this informal rule making procedure are subject to judicial review as to whether the findings and conclusions of the agency were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688, 700 (2d Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). Agency actions may also be set aside by a reviewing court if they are: 1) contrary to a constitutional right, power privilege or immunity (§ 706(2)(B)); 2) in excess of statutory jurisdiction (§ 706(2)(C)); 3) taken without observing requisite procedures (§ 706(2)(D)); or 4) unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court (§ 706(2)(F)).

### B. Formal rulemaking

APA § 553(c) also provides that where rules are required by statute to be made on the record after an opportunity for an agency hearing, Section 553 and its provisions for informal promulgation of rules do not apply. In such cases, adjudicative proceedings are covered by the provisions of APA Sections 556 & 557. Agency action taken pursuant to this "formal" procedure is subject to judicial review as to whether the action was supported by substantial evidence. 5 U.S.C. § 706(2)(E); *National Nutritional Foods Ass'n,* 512 F.2d at 700–701. Only cases subject to Sections 556 & 557, namely, those that require adjudication by the agency, are subject to this "substantial evidence" review. All other agency action, findings, and conclusions—including denial of citizen petitions— are held to the "arbitrary and capricious" standard discussed above.

### III. *The citizen petition*

#### A. Procedure

 APA § 553(e) requires every agency to "give an interested person the right to

petition for the issuance, amendment, or repeal of a rule." The FDA regulation that grants this right is found at 21 C.F.R. § 10.30. The Complaint alleges that the FDA did not observe proper procedures as required by law with regard to the plaintiff's petitions. However, there is no allegation of a violation of a specific procedure, and the plaintiff stated at oral argument on January 13, 1995 that she does not seek relief based on a breach of required procedure by the FDA.

The relevant FDA regulation, 21 C.F.R. § 10.30, authorizes any person, whether that person is a U.S. citizen or not, to request the FDA Commissioner to "issue, amend, or revoke a regulation or order or take or refrain from taking any other form of administrative action." 21 C.F.R. § 10.30(a), (b) (1994). In responding to such a request, the Commissioner is to take into consideration available agency resources for the subject, the priority assigned to the petition and the overall work of the agency. 21 C.F.R. § 10.30(e)(1) (1994).

Within 180 days of receipt of the petition, the Commissioner must respond by 1) approving the petition, 2) denying the petition, or 3) providing a tentative response indicating the reasons for postponing a final response (e.g., more time or more information is needed). While there is no requirement that the Commissioner hold hearings with regard to the petition, the Commissioner must consider the petition and must give written notice of the decision accompanied by an explanatory statement. *See, e.g., National Organization for Reform of Marijuana Laws v. Ingersoll*, 497 F.2d 654, 657–58 (D.C.Cir.1974).

The Court notes that the plaintiff's petition was submitted on February 21, 1992. An FDA letter dated February 25, 1992, advises Ms. Henley that her petition was received, accepted and assigned docket number 92P–0088/CP1. An FDA letter setting forth the reasons for denying the petition is dated October 7, 1992. This letter is five pages long and discusses the plaintiff's application and the reasons supporting the FDA's decision to deny the petition. This letter was sent to Ms. Henley from Carl C. Peck, M.D.,

Director of the Center for Drug Evaluation and Research. The FDA explains that this is the branch of the agency responsible for reviewing and approving new drug applications and drug labeling.

The plaintiff submitted a petition for reconsideration on or about October 31, 1992. Petitions for reconsideration are governed by 21 C.F.R. § 10.33, which provides that these petitions are to be submitted within 30 days of the decision for which review is sought. Reconsideration is a two step process. First the Commissioner grants or denies reconsideration. Then, if reconsideration is granted, the Commissioner issues a written decision regarding the outcome of the review.

The Court notes that the plaintiff's petition for reconsideration was timely submitted. The reconsideration petition may be granted following a prompt review by the Commissioner, if it is in the public interest or in the interest of justice. The Commissioner must grant the petition upon a determination that the following factors are all present: 1) relevant information was not adequately considered; 2) the position is not frivolous; 3) sound public policy grounds support reconsideration; 4) public interests do not outweigh reconsideration. 21 C.F.R. § 10.33(d) (1994). The Commissioner must issue a written decision that either reaffirms, modifies or overrules the prior decision, in whole or in part. 21 C.F.R. § 10.33(f) & (i) (1994).

On or about September 30, 1993, a three page letter from Ronald G. Chesemore, Associate Commissioner for Regulatory Affairs was sent to Ms. Henley. This letter stated that the decision denying Ms. Henley's initial petition was affirmed and discussed the reasoning for this action.

The Court finds that the FDA did comply with the procedural requirements of APA § 553(e) and 21 C.F.R. §§ 10.30 & 10.33.

## B. The standard of review

There is no allegation that the FDA's action was contrary to a constitutional right, power, privilege or immunity. *See* APA § 706(2)(B). Nor it is alleged that the FDA exceeded its jurisdiction or authority in deny-

ing Ms. Henley's petition so that it would be unlawful pursuant to APA § 706(2)(C).

▪ In addition, the Court finds that the action before it is not one of the limited situations in which a trial *de novo* is warranted pursuant to § 706(2)(F). *De novo* review is appropriate only where 1) an adjudication by the agency is flawed by inadequate fact-finding procedures; and 2) issues not before the agency arise in a subsequent judicial proceeding. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). No adjudication is before the Court for review, therefore *de novo* review is not appropriate. APA § 706(2)(F). For the same reason, denial of a citizen petition is not to be scrutinized by a "substantial evidence" standard. Denial of a citizen petition is a final agency action subject to judicial review, but it is not an adjudication. APA § 706(2)(E).

It has been held that denial of petitions with regard to administrative agencies are subject to a "very narrow" and deferential scope of review. *See, e.g., WWHT v. FCC*, 656 F.2d 807, 816–818 (D.C.Cir.1981). The reviewing court should "ensur[e] the rationality and fairness of agency decisionmaking...." *Natural Resources Defense Council, Inc. v. S.E.C.*, 606 F.2d 1031, 1039 (D.C.Cir.1979). "The agency's decision that the public interest does not require the promulgation of specific rules for the time being must be sustained 'if it violates no law, is blessed with an articulated justification that makes a rational connection between the facts found and the choice made, and follows upon a 'hard look' by the agency at the relevant issues.'" *Id.* at 817 (quoting *Action for Children's Television v. FCC*, 564 F.2d 458, 479 (D.C.Cir.1977)).

"The court is not empowered to substitute its judgment for that of the agency." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (noting, additionally, that an agency decision is entitled to a presumption of regularity). The Supreme Court further discussed the "arbitrary and capricious" standard in *Motor Vehicle Manufacturers, Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) as follows:

The Department of Transportation accepts the applicability of the "arbitrary and capricious" standard. It argues that under this standard, a reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute. *We do not disagree with this formulation.* [footnote 9: The Department of Transportation suggests that the arbitrary-and-capricious standard requires no more than the minimum rationality a statute must bear in order to withstand analysis under the Due Process Clause. We do not view as equivalent the presumption of constitutionality afforded legislation drafted by Congress and the presumption of regularity afforded an agency in fulfilling its statutory mandate.] The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207 (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment." *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc., supra*, 419 U.S., [281] at 285, 95 S.Ct., [438] at 442 [42 L.Ed.2d 447] [ (1974) ]; *Citizens to Preserve Overton Park v. Volpe, supra*, 401 U.S., at 416, 91 S.Ct., at 823. Normally an agency rule would be arbitrary and capricious if the agency has relied on factors which congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not

attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc., supra,* 419 U.S., at 286, 95 S.Ct., at 442. See also *Camp v. Pitts,* 411 U.S. 138, 142–143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (*per curiam*).... (emphasis supplied).

*Id.* 463 U.S. at 42–43, 103 S.Ct. at 2866–2867.

■ The Court will now review the FDA's action to determine if it was arbitrary or capricious, an abuse of discretion or unlawful under APA § 706(2)(A). In applying this standard, the Court is mindful that when it reviews agency action that is based upon scientific inquiry and technical expertise, a high degree of deference is appropriate. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) (courts should not direct an agency in choosing between reasonable alternatives); *see also, Ewing v. N.L.R.B.,* 861 F.2d 353, 357 (2d Cir. 1988). Significantly, the 'arbitrary or capricious' standard to be applied here is "more lenient" than the "substantial evidence" standard applicable in reviewing adjudicative proceedings. *See American Paper Institute, Inc. v. American Elec. Power Service Corp.,* 461 U.S. 402, 412 n. 7, 103 S.Ct. 1921, 1927 n. 7, 76 L.Ed.2d 22 (1983).

The plaintiff argues that a deferential standard is not appropriate here because "the case involves issues of law, fact, common sense and common decency." She contends that women would want to know that studies of animals indicate that estrogen is a carcinogen, and states that review of this case "does not require review of complex scientific or technical data." The plaintiff states that two scientific facts support her petition and contends that they are "undisputed and totally supported by the record." These facts relate to the effects of estrogen in animals and the inconclusiveness of studies regarding the effects of estrogen in humans.

It is this Court's view that the FDA's determination of what labeling best reflects current scientific information regarding the risks and benefits of oral contraceptives involves a high degree of expert scientific analysis. However, as discussed above, the proper standard of review here is not de novo or whether the decision was supported by substantial evidence. The standard is whether the decision was arbitrary, capricious, an abuse or discretion or contrary to law.

## C. FDA denial of the citizen petition

■ The FDA's explanatory statement that accompanies their October 7, 1992 denial of Ms. Henley's petition explains that a notice and comment procedure was conducted by the FDA in 1989 regarding the subject of her 1992 petition. The FDA explained that prior to 1989 the following warning was required to be set forth for oral contraceptives: "... estrogens have been shown to cause cancer in animals, which showing justifies the inference that estrogens may cause cancer in humans...." (codified at 21 C.F.R. § 310.501 (1989)). The FDA goes on to detail the revisions that were enacted as a result of the 1989 notice and comment proceeding. According to the FDA letter, the regulation was revised to reflect current information about the drug, with the intent to simplify the content and format of the information to reflect "new information about the drug's benefits and risks in a more timely fashion."

The FDA letter sets forth its new guidance language for physician labeling, which is:

Numerous epidemiological studies have been performed on the incidence of breast, endometrial, ovarian, and cervical cancer incidence in women using oral contraceptives. The overwhelming evidence in the literature suggests that use of oral contraceptives is not associated with an increase in the risk of developing breast cancer, regardless of the age and parity of first use or with most of the marketed brands and doses. The Cancer and Steroid Hormone (CASH) study also showed no latent effect in the risk of breast cancer for at least a decade following long-term use. A

few studies have shown a slightly increased relative risk of developing breast cancer, although the methodology of these studies, which included differences in examination of users and nonusers and differences in age at start of use has been questioned. FDA letter of October 7, 1992 at 3 (footnotes omitted). That letter also discusses recommendations regarding special instructions to certain categories of women. Nine studies are cited in the FDA's letter.

The letter to Ms. Henley states the position that "[b]ecause current scientific information no longer supports the conclusion that estrogen has been shown to cause cancer in animals, and, therefore by inference, in humans, the regulations no longer require such a warning." This statement was corrected and clarified in the FDA's reconsideration letter, discussed below.

The FDA letter of October 7, 1992, also discusses several studies that "appeared to show a possible relationship between oral contraceptive use and breast cancer...." The FDA explained that those studies fail to reveal a consistent pattern of association between the use of oral contraceptives and breast cancer upon consideration of the total population of breast cancer patients and control groups.

Ms. Henley's petition sets forth an argument regarding a consumer's "right to know." The petition advances two grounds to support this argument, namely 1) C.F.R. provisions requiring that patients be fully informed of the risks and benefits of oral contraceptives, and 2) product liability law requiring a warning of intensity. In response, the October 7, 1992, FDA letter expressly states the view that the product liability law cited in the petition does not govern FDA patient labeling requirements. The FDA also discusses at length the reasoning behind its labeling decision with regard to the risks and benefits associated with the use of oral contraceptives.

Finally, the FDA letter commented on Ms. Henley's request that warning information be placed on, rather than inside of, the dispensing package. The FDA referred to consideration of this subject during the 1989 notice and comment procedure and came to the conclusion that inserting printed information into the package, rather than printing it on the package or attaching it to the package, adequately ensured "that patients would receive the required information." The FDA explains, in papers supporting this motion, that it values completeness over visibility with respect to labeling.

The FDA letter concludes by informing Ms. Henley that "[t]he agency continuously reviews scientific findings pertinent to oral contraceptives. If the evidence supports a change in the labeling regulations for these products, FDA will take the necessary action." The Court notes that the 1989 FDA statement that accompanies its final rule states, "issues involving the labeling of oral contraceptives continue to be regularly discussed in open session before FDA's Fertility and Maternal Health Drugs Advisory Committee." 54 Fed.Reg. 22,586 (1989).

### D. FDA reconsideration and affirmation

The FDA Commissioner may grant a petition for reconsideration of a previously denied citizen petition if to do so would be in the public interest and in the interest of justice. 21 C.F.R. § 10.33(d) (1994). As discussed above, if all of the following four factors are present, the Commissioner must grant reconsideration: 1) previous inadequate consideration by the agency; 2) a position that is not frivolous; 3) sound public policy grounds supporting reconsideration; and 4) no conflict with public health or other public interest. 21 C.F.R. § 10.33(d) (1994). Here, the Commissioner did grant reconsideration.

The Court notes that the September 30, 1993 FDA letter affirming its prior denial states, "FDA has already revised its patient labeling guidance to reflect more recent scientific information than was reflected in the regulation and literature that you cited in support of your citizen petition." That letter expressly corrects a misstatement made in the FDA's October 7, 1992 letter to Ms. Henley as follows: "The petition response stated, incorrectly, that current scientific in-

formation no longer supports the conclusion that estrogen has been shown to cause cancer in animals. Studies do support a causal link between estrogen and cancer in animals." The letter goes on to discuss the FDA's view that animal studies are of little value as applied to humans with regard to the consequences of estrogen use.

It is clear that the Commissioner is limited, in reviewing a petition for reconsideration, to the administrative record on which the decision was based ('record' in this context, because no hearing was held, means the papers that were submitted to the agency and issued by the agency), and may not accept new information or comment. 21 C.F.R. § 10.33(e) (1994). The Commissioner responded to Ms. Henley's request for reconsideration setting forth the reasons for affirming its prior decision and stating, "[t]he agency has reexamined the administrative record and FDA's response to your first petition and has found no reason to disturb our previous findings." It is this Court's view that the Commissioner's letter reflects the consideration required by 21 C.F.R. § 10.33 (1994). Accordingly, the Court finds that the act of affirming the petition for reconsideration was not arbitrary, capricious, an abuse of discretion or otherwise contrary to law. APA § 706(2)(A).

The plaintiff urges the Court to review the complained of petition denials by a standard articulated in *American Horse Protection Ass'n, Inc. v. Lyng,* 812 F.2d 1, 5 (D.C.Cir. 1987). In *American Horse Protection Ass'n,* the Court reviewed an agency's refusal to initiate rulemaking to determine whether that decision was "reasoned" to assure that the agency considered relevant factors and explained the facts and policy concerns relied upon. *See id.* The plaintiff argues that the FDA does not include a reason in its letters as to why oral contraceptive packages should not contain a warning regarding a causal link between estrogen and cancer in animals. The Court disagrees, noting that the FDA's September 30, 1993 letter states,

Studies do support a causal link between estrogen and cancer in animals.

However, what is more important with respect to the labeling change that you seek

is that the pertinent animal studies have little predictive value with regard to the causal link between estrogen and cancer in women. Extensive studies done in women using oral contraceptive do not indicate an increased risk of cancer for the oral contraceptive formulations that are currently in general use.

In this Court's view the FDA did examine the relevant data to arrive at a well reasoned decision, and did articulate the factual and policy basis for its decision. *See American Horse Protection Ass'n,* 812 F.2d at 5–6. The FDA explanatory statement also reveals that the FDA considered the criticisms and alternatives raised by Ms. Henley in her petition. Ms. Henley argues that the record before the FDA includes evidence directly supporting the position she advances. The Court notes that the fact that such evidence did not persuade the FDA to act as the petition requested does not mean that the FDA did not consider the evidence, as it is required to do.

The Court finds that the FDA letters dated October 7, 1992 and September 30, 1993, reflect consideration by the FDA of each of the citizen petition's requests. The letters set forth detailed reasons addressing each issue raised in the petition and offers reasons supporting the FDA's denial of the petition. The Court finds that the FDA's consideration and communication regarding Ms. Henley's petition have a rational basis, are based on a consideration of the relevant facts, are within the scope of the authority delegated by the statute and are not arbitrary or capricious, an abuse of discretion or contrary to law.

## E. Prior notice and comment proceeding

■ Another important consideration that supports the propriety of the FDA's decision is that notice and comment rulemaking by the FDA in 1989 addressed the issues of consumer information content and placement as well as the issue of warnings regarding human and animal studies with regard to estrogen's causal link to cancer. *See* 54 Fed. Reg. 22,585–88 (1989). "If an agency has conducted a comprehensive rulemaking proceeding, providing opportunity for full public

participation, a subsequent petition for modification will not be granted." *See Nader v. NRC,* 513 F.2d 1045, 1054 (D.C.Cir.1975). The FDA points out, and Ms. Henley does not dispute that she did not participate in the notice and comment proceeding in 1989. It has been said that those who refrain from participation in the administrative proceedings should not be entitled to obtain direct judicial review of the regulations resulting. *Id.* at 1055.

Although Ms. Henley denies that her petition essentially sought review of the FDA's rule concerning oral contraceptives, as amended by notice and comment proceedings in 1989, the Court disagrees. Her petition to the FDA concerns the same subject matter as the 1989 administrative proceeding.

### F. Misleading labeling

■ 21 C.F.R. § 1.21(a) provides that labeling of drug is deemed to be misleading if it fails to reveal facts that are material with respect to consequences which may result from use of the drug. The plaintiff contends that the labeling approved by the FDA is misleading under 21 C.F.R. § 1.21(a) because its content does not disclose that animal studies reveal a relationship between estrogen use and cancer. In contrast, the FDA view is that the labeling advocated by Ms. Henley would be misleading because such a warning could lead to an erroneous inference, namely that the consequence of estrogen in animals will produce a similar result in humans.

The plaintiff also argues that the FDA has breached a "duty to warn," which exists because a reasonable woman would want to be informed of the risk in order to decide whether to decide to expose herself to a substance that has been shown to cause cancer in animals. The plaintiff cites *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) and *MacDonald v. Ortho Pharmaceutical Corp.,* 394 Mass. 131, 475 N.E.2d 65 (1985), *cert. denied,* 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985) to support her argument regarding a duty to warn under state laws. This state product liability law issue is not relevant to the Court's review of an administrative agency, such as the FDA, and its resolution of the plaintiff's citizen petitions, under the pertinent rules and regulations.

Ms. Henley argues to the Court that the FDA did not properly consider this issue and did not respond to her petition's argument that consumers have a right to know this information. In the Court's view, the FDA's letters are responsive to Ms. Henley's assertion that women have a right to know that animal studies reflect a causal link between estrogen use and cancer. The FDA explanation may not have expressly stated the word 'misleading,' but it certainly indicates the reasons for the FDA decision: 1) the FDA conclusion that animal studies are not of value in predicting the consequences of human use of estrogen and 2) the FDA conclusion that recently studied evidence "overwhelmingly" suggests that there is no relationship between oral contraceptive use and an increased risk of breast cancer. That conclusion was set forth expressly and elaborated upon within the context of this lawsuit.

Ms. Henley argues to the Court that the FDA's express response that such information is 'misleading' comes too late, as it was not communicated by the FDA upon review of her petition. She urges the Court to mandate the labeling language she advocates. This argument necessitates a discussion of the appropriate remedy where a court finds that an agency action is arbitrary and capricious, although that is not the finding of this Court in this case.

Where a reviewing court finds that an agency fails to present a reasonable explanation of its decision, the appropriate remedy is remand to the agency. *See, e.g., American Horse Protection Ass'n,* 812 F.2d at 7. "It is only in the rarest and most compelling of circumstances that this court has acted to overturn an agency judgment not to institute rulemaking." *WWHT, Inc. v. F.C.C.,* 656 F.2d 807 (D.C.Cir.1981) (explaining that remand for further explanation or reconsideration is the usual remedy). See also *Motor Vehicle Manufacturers Ass'n,* 463 U.S. at 56–57, 103 S.Ct. at 2873–2874 (ordering case to be remanded to agency for further consideration) and *Camp v. Pitts,* 411 U.S. 138, 141,

143, 93 S.Ct. 1241, 1243, 1244, 36 L.Ed.2d 106 (1973) (ordering case to be remanded for further explanation). If this Court found the FDA's response to Ms. Henley's petition to be deficient, which it does not, the appropriate remedy would be remand for further explanation or reconsideration, not a mandate to promulgate the requested rule.

The Court reiterates its finding, for the reasons discussed above, that the FDA's labeling decisions are rational, supported by relevant factors and are also within the FDA's scope of authority. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42, 103 S.Ct. at 2866.

### CONCLUSION

Disposition by summary judgment is appropriate in this case. The Court's review is limited to the administrative record before it and there are no disputed issues of fact with regard to the record. The facts that the parties dispute relate only to the scientific debate regarding the causal link between estrogen and cancer and to the debate concerning the best manner of stating the attendant risks and benefits to consumers of oral contraceptives. Those facts do not affect the outcome of this lawsuit under the governing standard of law set forth in the APA. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The FDA came to a conclusion with which the plaintiff does not agree. However, the method by which that conclusion was reached, the integrity of the reasoning that supports the conclusion, and the thoroughness of the explanation offered for the conclusion are the matters within this Court's province of review.

For the reasons discussed above, the Court finds that the FDA's decision to deny the plaintiff's citizen petition and its subsequent affirmation of that decision were not arbitrary, capricious or an abuse of discretion; nor were they substantively or procedurally contrary to law. On the contrary, the FDA's decisions were rational, based on a consideration of the relevant factors and within the scope of authority delegated to the FDA. Accordingly, the defendants' motion for summary judgment is granted and the plaintiff's cross motion for summary judgment is denied. The Complaint is dismissed.

**SO ORDERED.**