Elizabeth L. HENLEY, Plaintiff–
Appellant,

v.

FOOD AND DRUG ADMINISTRATION,
Department of Health and Human Services; Kessler, Dr., Commissioner of Food and Drug; United States, Defendants–Appellees.

No. 262, Docket 95–6034.

United States Court of Appeals,
Second Circuit.

Argued Nov. 27, 1995.

Decided Feb. 22, 1996.

Elizabeth L. Henley, pro se.

Douglas Ross, Attorney, Office of Consumer Litigation, Civil Division, United States Department of Justice, Washington, DC (Frank W. Hunger, Assistant Attorney General, Washington, DC; Zachary W. Carter, United States Attorney, Eastern District of New York, Brooklyn, NY; Margaret Jane Porter, Chief Counsel, Karen E. Schifter, Assistant Chief Counsel, United States Food and Drug Administration, Rockville, MD, of counsel), for Defendants–Appellees.

Before: OAKES, McLAUGHLIN, and LEVAL, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Elizabeth Henley, an attorney *pro se*, appeals from a summary judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*), upholding the United States Food and Drug Administration's ("FDA") denial of her citizen petition. *Henley v. FDA*, 873 F.Supp. 776 (E.D.N.Y.1995). On appeal, Henley argues that the FDA's decision was arbitrary, capricious, an abuse of discretion, and contrary to law. We disagree, and affirm the judgment of the district court.

## BACKGROUND

The background of this case has been set forth in considerable detail in the district court's comprehensive opinion, *Henley v. FDA*, 873 F.Supp. 776 (E.D.N.Y.1995). Only its salient features are set forth here.

618

The FDA regulates the labeling of oral contraceptives, including the package inserts. *See* Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 352, 355. Before 1989, the FDA's oral contraceptive labeling regulations required a specific warning in the package insert that estrogen, a component of oral contraceptives, has "been shown to cause cancer in animals, which showing justifies the inference that estrogens may cause cancer in humans." 21 C.F.R. § 310.501 (1989).

In 1989, after notice and comment proceedings, the FDA revised the requirements for patient package inserts for oral contraceptives (the "1989 Ruling"). *See* 54 Fed. Reg. 22,585–88 (1989). The new regulations required the inclusion of general categories of information—*e.g.*, the effectiveness of the drug, its side effects, risks associated with cigarette smoking, potential adverse reactions, etc. Significantly, the FDA no longer mandated the use of *any* specific wording, including the animal carcinogen warning. The change from a specific warning to a general description was purportedly made so that information on the risks and benefits of the drug could thereafter be updated on a more timely basis without having to engage in protracted notice and comment rule-making procedures. *See id.*

Elizabeth Henley, on behalf of the "One in Nine: Long Island Breast Cancer Action Coalition," a women's health organization, filed a citizen petition with the FDA, *see* 21 C.F.R. § 10.30, requesting the FDA to amend the warning label requirements for oral contraceptives. Specifically, the petition requested that the external packaging of oral contraceptives carry one of the following warnings:

"WARNING: ESTROGEN, A COMPONENT OF ORAL CONTRACEPTIVES HAS BEEN SHOWN TO CAUSE BREAST CANCER AND OTHER CANCERS IN ANIMALS AND MAY CAUSE CANCER IN HUMANS. Read enclosed pamphlet addressing this and other risks before use."

Or, alternatively:

"WARNING: ESTROGEN, A COMPONENT OF ORAL CONTRACEPTIVES HAS BEEN SHOWN TO CAUSE CANCER IN ANIMALS WHICH SHOWING JUSTIFIES THE INFERENCE THAT ESTROGEN MAY CAUSE CANCER IN HUMANS. Read enclosed pamphlet before use."

Or, as a minimum alternative:

"WARNING: ESTROGEN, A COMPONENT OF ORAL CONTRACEPTIVES, HAS BEEN SHOWN TO CAUSE CANCER IN ANIMALS. Read enclosed pamphlet before use."

Letter from Elizabeth L. Henley 1 (Feb. 11, 1992) (hereinafter, "Henley Petition").

Henley provided several arguments to support her petition. Statistics from the American Cancer Society indicate that one in nine women will develop breast cancer. Based on these alarming statistics, Henley asserted that many women do not want to rely solely on early detection, but, rather, on early prevention, *i.e.*, eliminating or reducing their exposure to animal or human carcinogens. Henley cited an article on cancer generally, published by Appellee–Department of Health and Human Services, which advised that the best way to prevent cancer is to reduce or eliminate exposure to substances known to cause cancer in animals or humans. *See Everything Doesn't Cause Cancer (But If It Does, Watch Out)*, Health Letter (The Public Citizen Health Research Group) Feb. 1991, at 4–5. In addition to the animal studies cited, Henley's petition further listed thirteen human studies that allegedly established a correlation between long-term oral contraceptive use and breast cancer. Thus, Henley argued, "[w]omen have the right to all the information necessary to make *their own choice* as to whether or not the benefits of using the pill outweigh the risk." Henley Petition at 3.

The FDA denied Henley's petition. It maintained that recent scientific studies involving women and oral contraceptives indicated no increased risk of cancer in humans:

"Numerous epidemiological studies have been performed on the incidence of breast, endometrial, ovarian, and cervical cancer in women using oral contraceptives. The overwhelming evidence in the literature suggests that use of oral contraceptives is

not associated with an increase in the risk of developing breast cancer, regardless of the age and parity of first use or with most of the marketed brands and doses. The Cancer and Steroid Hormone (CASH) study also showed no latent effect on the risk of breast cancer for at least a decade following long-term use. A few studies have shown a slightly increased relative risk of developing breast cancer, although the methodology of these studies, which included differences in examination of users and nonusers and differences in age at start of use, has been questioned."

Letter from Carl C. Peck, M.D., Director, Center for Drug Evaluation and Research, Food and Drug Administration 2–3 (Oct. 7, 1992) (citations omitted). In addition, the FDA explained that it continually monitors scientific information pertaining to the use of oral contraceptives, and updates, when appropriate, the guidance texts that it provides to drug companies. *See id.* at 3. It further claimed that the 1989 Ruling made it possible to update package inserts more promptly because revisions would not be subject to notice and comment rule-making. *See id.* at 2.

When denying the petition, however, the FDA made a mistake. It stated that "current scientific information no longer supports the conclusion that estrogen has been shown to cause cancer in animals, and, therefore, by inference, in humans." *Id.* Henley seized upon this mistake and filed a petition, asking the FDA to reconsider its 1989 Ruling. *See* Letter from Elizabeth L. Henley 2 (Oct. 31, 1992).

The FDA denied Henley's petition for reconsideration. In so doing, the FDA conceded that "[s]tudies do support a causal link between estrogen and cancer in animals." Letter from Ronald G. Chesemore, Associate Commissioner for Regulatory Affairs, Food and Drug Administration 2 (Sept. 30, 1993). But it asserted that animal studies have little predictive value when extended to oral contraceptives and cancer in humans:

Extensive studies done in women using oral contraceptives do not indicate an increased risk of cancer for the oral contraceptive formulations that are currently in

general use. These human studies must take precedence over those done in animals, which, among other things, employ dosages that are relatively much higher than those taken by women who use oral contraceptives. The human studies must take precedence over those done in animals because the data obtained from those studies is more directly applicable to women than data obtained from animal studies.

*Id.*

Henley appealed the FDA's decision to the United States District Court for the Eastern District of New York. *See* Administrative Procedure Act, 5 U.S.C. §§ 701–706. The FDA filed a motion for summary judgment, and Henley filed a cross-motion for summary judgment. The district court denied Henley's cross-motion for summary judgment, granted summary judgment for the FDA, and dismissed the complaint. *Henley,* 873 F.Supp. at 786. Henley now appeals.

## DISCUSSION

Henley asserts that the FDA's denial of her citizen petition was arbitrary, capricious, an abuse of discretion, and contrary to law. We disagree.

### I. *Scope of Review*

On appeal from a grant of summary judgment, "we must subject the district court's judgment to plenary review, and apply the same summary judgment test as applied by the district court." *Bersani v. Robichaud,* 850 F.2d 36, 46 (2d Cir.1988) (citations omitted), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1556, 103 L.Ed.2d 859 (1989). Our scope of review of the FDA's determination, like that of the district court, is governed by the Administrative Procedure Act.

### II. *Agency Determination*

The Administrative Procedure Act ("APA") provides that a district court may set aside an agency's findings, conclusions or actions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### A. *Arbitrary, Capricious, or an Abuse of Discretion*

■ An agency rule may be deemed arbitrary, capricious or an abuse of discretion "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Assoc. of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983); *see also New York Council, Assoc. of Civilian Technicians v. Federal Labor Relations Auth.*, 757 F.2d 502, 508 (2d Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985).

■ Although the scope of judicial review under this standard is narrow and deferential, "a reviewing court must be certain that an agency has considered all the important aspects of the issue and articulated a 'satisfactory explanation for its action, including a "rational connection between the facts found and the choice made."'" *New York Council*, 757 F.2d at 508 (quoting *State Farm*, 463 U.S. at 43, 103 S.Ct. at 2866–67 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962))); *see also Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031, 1049 (D.C.Cir.1979). But, a reviewing court cannot "substitute its judgment for that of the agency," *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971), particularly when that determination is propelled by the agency's

scientific expertise, *see Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983); *Federal Power Comm'n v. Florida Power & Light Co.*, 404 U.S. 453, 463, 92 S.Ct. 637, 643–44, 30 L.Ed.2d 600 (1972); *Browning–Ferris Indus. S. Jersey, Inc. v. Muszynski*, 899 F.2d 151, 160 (2d Cir.1990).

■ Obviously, as Judge Spatt noted, "the FDA's determination of what labeling best reflects current scientific information regarding the risks and benefits of oral contraceptives involves a high degree of expert scientific analysis." *Henley*, 873 F.Supp. at 782. The regulations prior to the 1989 Ruling were based on research from 1978. According to the FDA, studies performed on women after 1978 have failed to establish an increase in the risk of cancer for women taking the oral contraceptive formulations that are currently in use.[1] Although acknowledging that animal studies indicate a link between estrogen and cancer, the FDA maintains that those results are simply not as probative as the results of recent human studies. Specifically, the FDA noted that animal studies employed higher doses of estrogen than those currently contained in oral contraceptives, and that data from human studies are more directly applicable to women than data from animal studies.

Based on the information and studies cited by the FDA and the reasons proffered for its determination, we cannot say that its labeling decision was irrational, unsupported by relevant factors, counter to the evidence, or "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 42, 103 S.Ct. at 2867; *see also New York Council*,

**1.** In support of its conclusion, the FDA cited the following studies: Richard W. Sattin, *Oral Contraceptive Use and the Risk of Breast Cancer. The Cancer and Steroid Hormone Study of the Centers for Disease Control and the National Institute for Child Health and Human Development*, 315 New Eng.J.Med. 405–11 (1986); Klim McPherson & James Owen Drife, *The Pill and Breast Cancer: Why the Uncertainty?* 293 Brit.Med.J. 709–10 (1986); M.C. Pike et al., *Breast Cancer in Young Women and Use of Oral Contraceptives: Possible Modifying Effect of Formulation and Age at Use*, II Lancet 926–29 (1983); Donald R. Miller, M.S.

et al., *Breast Cancer Risk in Relation to Early Oral Contraceptive Use*, 68 Obstet.Gynec. 863–68 (1986); H. Olson et al., *Oral Contraceptive Use and Breast Cancer in Young Women in Sweden*, I Lancet 748–49 (1985); K. McPhearson et al., *Early Contraceptive Use and Breast Cancer: Results of Another Case–Control Study*, 56 Brit.J.Cancer. 653–60 (1987); George R. Huggins & Peter K. Zucker, M.D., *Oral Contraceptives and Neoplasia: 1987 Update*, 47 Fertil.Steril. 733–61 (1987); Charlotte Paul et al., *Oral Contraceptives and Breast Cancer: A National Study*, 293 Brit.Med.J. 723–25 (1986).

757 F.2d at 508. Certainly, neither the outside of a drug package nor its insert can contain the entire body of scientific research, and the average consumer cannot be expected to analyze and weigh each conflicting study. The FDA possesses the requisite know-how to conduct such analyses, by sifting through the scientific evidence to determine the most accurate and up-to-date information regarding a particular drug, and how those data affect human usage. We therefore defer to its reasonable findings in this case. *See, e.g., Schering Corp. v. FDA,* 51 F.3d 390, 399 (3d Cir.) (finding that FDA's "judgments as to what is required to ascertain the safety and efficacy of drugs fall squarely within the ambit of the FDA's expertise and merit deference from us"), *cert. denied,* —— U.S. ——, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995).

### B. *Contrary to Law*

■ Henley also argues that the FDA's approved labeling is "misleading," because its content does not disclose that animal studies reveal a relationship between estrogen use and cancer. Consequently, she contends that the FDA's decision is contrary to law. We disagree.

Section 502 of the Federal Food, Drug and Cosmetic Act provides, in pertinent part, that:

> [a] drug or device shall be deemed to be misbranded—(a) if its labeling is false or misleading in any particular.

21 U.S.C. § 352(a). "Misleading," as used in § 502, is defined as follows:

> (n) If an article is alleged to be misbranded because the labeling is misleading, then in determining whether the labeling is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling related under the conditions of use prescribed in the labeling thereof or under such conditions of use as are customary or usual.

21 U.S.C. § 321(n). The FDA itself construes these provisions to mean that if consumers of oral contraceptives are not "fully informed of the benefits and risks involved in [the] use" of oral contraceptives, then the "oral contraceptive drug product ... is misbranded under section 502 of the Federal Food, Drug, and Cosmetic Act." 21 C.F.R. 310.501(a).

As discussed above, the FDA has rationally concluded, based on its expertise, that the inclusion of an animal carcinogen warning is not warranted in light of current scientific studies performed on humans. The pertinent animal studies in this case—showing a connection between estrogen and cancer—are not necessarily applicable to humans, particularly where the animal studies used relatively higher dosages than would normally be ingested by humans. We therefore find that the FDA did not fail to reveal facts material to the use of the drug, *see* 21 U.S.C. § 321(n), and conclude that its labeling decision was not misleading. Consequently it was not contrary to law.

We have fully considered all other claims advanced on this appeal and find them unavailing.

### CONCLUSION

■ Henley has presented sound and cogent arguments for the inclusion of cautionary information, and we might not have chosen the FDA's course had it been ours to chart. But that is hardly the point. Where, as here, an agency's determination cannot be characterized as arbitrary, capricious, an abuse of discretion, or contrary to law, the APA precludes us from substituting our judgment for that of the agency. *See Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823–24; *Baltimore Gas & Elec.,* 462 U.S. at 103, 103 S.Ct. at 2255. Accordingly, the decision of the district court is AFFIRMED.