Longinus AGOR, Plaintiff,

v.

Loretta LYNCH, in her official capacity as Attorney General of the United States; Preet Bharara, in his official capacity as United States Attorney for the Southern District of New York; and United States Department of Homeland Security, Defendants.

16 Civ. 2354 (PGG)

United States District Court,
S.D. New York.

Signed 09/13/2017

Yoram M. Nachimovsky, Law Offices of Yoram Nachimovsky, New York, NY, for Plaintiff.

Brandon Matthew Waterman, Bryan Keith Lonegan, Shane Patrick Cargo, United States Attorney's Office, New York, NY, for Defendants.

## ORDER

### PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Longinus Agor brings this action, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., against the United States Department of Homeland Security ("DHS"), Loretta Lynch, Attorney General of the United States, and Preet Bharara, United States Attorney for the Southern District of New York.[1] (Dkt. No. 1) Plaintiff is a Nigerian citizen who entered the United States in 1998 on a temporary visitor visa, and who remained in this country illegally after the visa expired. In 2009, Plaintiff applied for an adjustment of status, seeking eligibility as a "grandfathered alien" within the meaning of Section 245(i) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1255(i), based on a prior I–140 visa petition that he filed in 1999. The United States Citizenship and Immigration Services ("USCIS") denied Plaintiff's application, on the grounds that the 1999 petition was not "approvable when filed," and that Plaintiff is therefore not eligible for an adjustment of status as a "grandfathered alien." Plaintiff seeks judicial review of the agency's denial, and an order directing the agency to approve his application.

Defendants have moved for summary judgment, arguing that the agency's decision to deny Plaintiff's application for an adjustment of status was not arbitrary or capricious, or otherwise contrary to law. (See Notice of Motion (Dkt. No. 15); Def. Moving Br. (Dkt. No. 16) at 14)[2] For the reasons stated below, Defendants' motion will be granted.

---

1. Jefferson B. Sessions III is now Attorney General, and Joon H. Kim is now Acting United States Attorney for the Southern District of New York. Accordingly, these individuals will be substituted for Loretta Lynch and Preet Bharara. See Fed. R. Civ. P. 25(d). The Clerk of the Court is directed to record this change.

2. With the exception of the Certified Administrative Record, all references to page numbers in this Order are as reflected in this District's Electronic Case Filing system. Citations to the Certified Administrative Record use the page numbers assigned by USCIS.

## BACKGROUND

### I. FACTS

#### A. Plaintiff's Background and Arrival in the United States

Plaintiff is a native and citizen of Nigeria. (Certified Administrative Record ("CAR") at 309, 315–16) In 1981, Plaintiff graduated from the University of Lagos College of Medicine with "degrees of M.B., B.S." (Id. at 39) According to Plaintiff's resume and letters of recommendation, he received several awards for academic achievement while in medical school in Nigeria. (Id. at 218–19, 225–28) Based on an article Plaintiff wrote for "Medilag"— the "Journal of the Medical Students' Association" at the University of Lagos College of Medicine—he won an award for "outstanding contribution[ ]" to the journal. (Id. at 218–19, 230–36)

In 1983, Plaintiff was certified as a medical practitioner by the Nigeria Medical Council. (Id. at 221) Plaintiff subsequently worked at various hospitals and medical clinics in Nigeria. (See id. at 31–32, 218–19) In 1998, the Educational Commission for Foreign Medical Graduates awarded Plaintiff a certificate of readiness to enter residency or fellowship programs in the United States. (See id. at 38)

On June 11, 1998, Plaintiff entered the United States at Detroit, Michigan, on a B–2 temporary visitor visa.[3] (Id. at 61, 106, 319) Although Plaintiff's visitor visa expired on April 27, 1999 (see id. at 319), the

I–94 card[4] issued to Plaintiff upon arrival in the United States permitted him to remain in this country until December 10, 1999. (Id. at 106) Plaintiff did not leave the United States, however.

#### B. Plaintiff's 1999 I–140 Visa Petition

In early 1999, Plaintiff obtained a business card for "Professor William Smart, Counselor at Law," who held himself out as "specializ[ing] in INS Matters." (Id. at 394, 429) The business card lists Smart's address as "Center for Research, 490 Bay Street, Staten Island, NY 10340." (Id. at 429) According to Plaintiff, in February 1999, he met with Smart, provided him with a copy of his resume, and paid him "a few thousand dollars" to prepare forms for an application for lawful permanent residence in the United States. (See id. at 394) Smart allegedly prepared the forms using Smart's Staten Island address, and after Plaintiff signed the completed forms, he had no further involvement in their submission. (Id. at 215, 394–95)

On September 30, 1999, Plaintiff's Form I–140 Immigrant Petition for Alien Worker ("1999 I–140 Petition") was filed with the Immigration and Naturalization Service ("INS").[5] (Id. at 332, 338–39) Part 1 of the form—which requests "[i]nformation about the person or organization filing this petition"—identifies Plaintiff as the petitioner and provides the following address:

---

3. "Visitor visas are nonimmigrant visas [permitting] persons ... to enter the United States temporarily." U.S. Dep't of State, "Visitor Visa: Overview," https://travel.state.gov/content/visas/en/visit/visitor.html (last visited Sept. 13, 2017). A "category B–2" visa permits the holder to temporarily enter the United States for "tourism, pleasure, or visiting" purposes. Id.

4. An I–94 card is a paper record that customs officers attach to a non-citizen visitor's passport upon entry into the United States. U.S.

Customs and Border Patrol, "Definition of an I–94," https://help.cbp.gov/app/answers/detail/a_id/880/=/definition-of-an-i-94 (last visited Sept. 13, 2017). Visitors must leave the United States on or before the date stamped on the I–94 card. Id.

5. In the Homeland Security Act of 2002, Congress abolished the INS and transferred the former agency's functions to various agencies within the Department of Homeland Security, including USCIS. See Pub. Law No. 107–269, 116 Stat. 2135 (Nov. 25, 2002).

"Colombia University, Attn: Professor Willie Williams, 490 Bay Street, Room 3A, S[taten] I[sland], N[ew] Y[ork]." (Id. at 338) In Part 5 of the form—which requests information about the "[t]ype of petitioner"—the box "Self" is checked.[6] (Id. at 339) Plaintiff's signature appears on the form. (Id. at 339, 394)

Plaintiff's Form I–140 states that he is petitioning for a visa under the classification of "[a]n outstanding professor or researcher." (Id. at 338) Plaintiff's application states that he will hold full-time employment as a medical doctor conducting "AIDS research—African population" at "Colombia University."[7] (Id. at 339) There is no evidence, however, that Plaintiff had, or expected to have, an employment relationship with Columbia University or any other educational institution at the time his 1999 I–140 Petition was submitted.

On October 2, 2000, the INS sent Plaintiff a notice of intent to deny his 1999 I–140 Petition. (Id. at 334–37) The notice acknowledges that Plaintiff filed a visa petition under the classification of "Outstanding Professors and Researchers," and cites the following deficiencies in Plaintiff's application:

> The beneficiary [i.e. Plaintiff] filed the petition. Only U.S. employers, who conform to the requirements specified in section 203(b)(1)(B) of the INA and Title 8, Code of Federal Regulations, Part 204.5(i)(3) may file for aliens under this classification.

> Additionally, you have not shown that the beneficiary has had the requisite three years of qualifying work experi-

ence as of the date of submission of the petition.

Lastly, while the petition contains generalized statements about the beneficiary's capabilities as a medical practitioner in Nigeria, the evidence of record does not convincingly demonstrate that the beneficiary has international recognition in his/her field of endeavor.

(Id. at 335) The notice further states that the INS "will not make a final decision on your petition for thirty (30) days. During that time you may submit any evidence that you feel will overcome the above stated reasons for denial." (Id.) The notice also directs Plaintiff to "[s]ubmit a completely executed Form I–140 signed by an authorized official of the U.S. employer that intends to permanently employ the beneficiary." (Id.)

As to William Smart, a/k/a "Willie Williams," the notice of intent to deny states:

> It appears you wish to be represented in this matter. The individual listed as your representative has not been shown to be an attorney or an accredited representative before this Service. Please provide documentary evidence to show that your representative is an attorney in good standing or has been accredited as a bona fide representative before this Service.

(Id.) The INS sent the notice of intent to deny to Plaintiff, care of "Colombia University, 490 Bay St RM 3A, Staten Island NY 10304," which is the address listed in Plaintiff's I–140 petition. (See id. at 334, 338)

---

6. Plaintiff checked the box for "self" at Smart's direction. (CAR at 395)

7. The record indicates that Smart completed the portions of the Form I–140 concerning Plaintiff's purported employment at "Colom-

bia University." (See CAR at 395) Part 9 of the form identifies Smart—using the alias "Prof. Willie Williams"—as the individual who "prepared th[e] application at the request of [Plaintiff]." (See id. at 339)

On November 24, 2000, the INS sent Plaintiff a formal notice denying his 1999 I–140 Petition. (Id. at 332) The denial letter—which was sent to the same address—states:

On October 2, 2000, you were notified of this Service's intent to deny the petition you filed ... on September 30, 1999. You were granted an opportunity to submit any evidence you thought would overcome the grounds of denial. The record does not include a response to this Service's notice. Therefore, the grounds for denial have not been overcome.

In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefits sought. See Matter of Brantigan, 11 I & N Decision 493 (BIA 1966).

Therefore, your petition is denied.

(Id. at 332)

Plaintiff claims that he never received copies of the notice of intent to deny or the formal notice of denial. (Id. at 395)

Between 2000 and 2003, Plaintiff completed his medical residency at the Morehouse School of Medicine in Atlanta, Georgia, and received a certification in internal medicine from the American Board of Internal Medicine. Plaintiff then worked as a medical practitioner in North Carolina and South Carolina. (See id. at 31–36)

On July 26, 2001, INS Special Agent Bob Martin contacted Plaintiff in connection with an investigation into Smart's submission of fraudulent visa applications. (Id. at 213, 215) Smart was later arrested and charged with visa fraud. (Id. at 214; see also No. 02 Cr. 249 (S.D.N.Y.) (DAB)) Investigators remained in contact with Plaintiff in the event that his testimony would be needed against Smart, but Plaintiff was never called to testify.[8] (CAR at 214–15)

## C. Plaintiff's 2004 I–485 Application for Adjustment of Status

On December 8, 2004, Plaintiff filed a Form I–485 Application to Register Permanent Resident or Adjust Status, along with Supplement A to Form I–485 for Adjustment of Status Under Section 245(i) (collectively, the "2004 I–485 Application"). (Id. at 96–101) Plaintiff admitted in his application that he had "failed ... to maintain, continuously, lawful status" in the United States, and he claimed eligibility for adjustment of status as a "grandfathered alien"—within the meaning of Section 245(i) of the INA, 8 U.S.C. § 1255(i)—based on his 1999 I–140 Petition. (See id. at 100–01)

On November 19, 2005, USCIS denied Plaintiff's 2004 I–485 Application for adjustment of status. The agency determined that Plaintiff could not rely on the 1999 I–140 Petition "as the vehicle for ... grandfathering." (See id. at 91–93) The denial letter explains that, pursuant to 8 C.F.R. § 245.10, an alien qualifies for grandfathering only where he "is the beneficiary ... of ... [a visa] petition ... which was properly filed with the Attorney General on or before April 30, 2001, and which was approvable when filed." (Id. at 91) The regulations further provide that a visa petition is "approvable when filed" when it is "properly filed, meritorious in fact, and non-frivolous." (Id.)

The denial letter further explains that the 1999 I–140 Petition does not demonstrate that Plaintiff is qualified for classification as an "outstanding professor or researcher," because, inter alia, the petition contains "no offer of employment proffered

8. The record does not indicate whether Smart was convicted of visa fraud, and no disposition is reported on the docket for Smart's criminal case. (See No. 02 Cr. 249 (S.D.N.Y.) (DAB))

to [Plaintiff] from an institution of higher learning," and "a U.S. employer did not file the [1999] I–140 [P]etition" on Plaintiff's behalf. (See id. at 93) Because Plaintiff had not "submit[ted] evidence of a previously filed immigrant visa petition . . . that was meritorious in fact and non-frivolous," he did "not meet the definition of a grandfathered alien" within the meaning of 8 U.S.C. § 1255(i) and 8 C.F.R. § 245.10(a)(1)(i). (Id.) USCIS therefore denied Plaintiff's application.

The denial letter also notes that Plaintiff's 1999 I–140 Petition may have been part of a "scheme to obtain immigration benefits . . . via the submission of an I–140 [petition] that was without merit and totally misrepresented [Plaintiff's] potential for employment." (Id.)

On December 13, 2005, Plaintiff moved to reopen. (Id. at 78–83) On January 24, 2006, USCIS denied the motion, finding that Plaintiff "ha[d] not established [that] his [1999] I–140 [P]etition was meritorious in fact[ or] non-frivolous." (Id. at 68–71)

### D. Plaintiff's 2009 I–485 Application for Adjustment of Status

On November 5, 2009, Plaintiff submitted another I–485 Application to Register Permanent Residence or Adjust Status ("2009 I–485 Application") (id. at 486), along with an I–140 Immigrant Petition for Alien Worker. In the I–140 petition, Plaintiff sought a "national interest waiver" as an alien holding an advanced degree or who is of "exceptional ability." (Id. at 3–5) On February 25, 2010, USCIS approved Plaintiff's I–140 application for a national interest waiver. (See id. at 678)

On August 31, 2015, however, USCIS sent Plaintiff a notice of intent to deny the 2009 I–485 Application, on the ground that Plaintiff had not shown that he "maintained . . . [lawful] nonimmigrant status in the United States beginning on June 11, 1998 and ending on November 5, 2009," the date of his application. (See id. at 400–02) USCIS directed that Plaintiff submit evidence—by October 3, 2015—showing that he had maintained lawful status in the United States during that period. (See id. at 401–02)

On October 2, 2015—in response to the notice of intent to deny—Plaintiff filed Supplement A to Form I–485 for Adjustment of Status Under Section 245(i) ("2009 I–485 Supplement"). In the 2009 I–485 Supplement, Plaintiff sought to avail himself of the "grandfathered alien" exception to the lawful status requirement, based on his 1999 I–140 Petition. (See id. at 403–05, 477–78) USCIS did not receive Plaintiff's 2009 I–485 Supplement by October 3, 2015, however, and on October 21, 2015, USCIS denied Plaintiff's 2009 I–485 Application for failure to provide evidence of lawful immigrant status. (Id. at 398–99)

On November 4, 2015, Plaintiff filed a motion to reopen. (Id. at 393–96) Plaintiff argued that—pursuant to his 2009 I–485 Supplement—USCIS should "grandfather [him] under [Section] 245(i) of the INA," based on his 1999 I–140 Petition. (Id. at 393) Plaintiff acknowledged that, "[i]n order to establish that an alien is grandfathered, the [p]etition must have been 'approvable when filed,' which by regulation means 'properly filed,' 'meritorious in fact,' and 'non-frivolous.'" (Id. at 395) Plaintiff argued that his 1999 I–140 Petition was "approvable when filed," and that therefore he qualified for grandfather status:

> [T]he BIA . . . [has] ruled that "approvable when filed" requires a signature and fee, i.e., "date stamped and accepted for filing."

> Th[e] [BIA] also [has] ruled that an [a]pplication is complete even if it raises additional questions and remains properly filed, notwithstanding the need to provide additional information to obtain

a favorable adjudication of the [a]pplication....

....

Returning to the [1999 I–140 Petition], the Petition was signed by [Plaintiff] and the fee was duly paid. [T]here was no response to the [2000 notice of intent to deny] issued one month later[,] ... because [Plaintiff] was uninformed of the fact that the notices were sent to [his] rogue attorney's address. This event or lack of response does not detract from the fact that the filing was approvable when filed.

[Plaintiff] could have qualified as a Self–Petitioning Professional under the National Interest Waiver program. In fact[,] he did precisely that by subsequently receiving a National Interest Waiver on [November 5, 2009 based on his] advanced degree or exceptional ability as a medical doctor working in a shortage area.... Hence[, Plaintiff's] case should not be considered in any way [to be] "frivolous or lacking merit."

(Id. at 395–96) [9]

On January 15, 2016, USCIS denied Plaintiff's motion. (Id. at 374–76) The denial letter explains that, with respect to applications for adjustment of status based on the "grandfathered alien" exception, " '[w]hen the denial [of the underlying petition] relates to the merits [of the petition], the alien cannot continue to be deemed a beneficiary upon denial of the petition ..., and the alien cannot be considered grandfathered as the result of the filing of such a petition.' " (Id. at 375 (quoting USCIS Memorandum HQ 70/23.1–P/HQ 70/8–P (June 10, 1999))) The denial letter further explains that denials on the merits " 'include[ ] meritless or fraudulent petitions or applications, or cases in which the claimed

relationship or employment simply cannot serve as the basis for issuance of a visa.' " (Id.)

In denying the motion to reopen, USCIS concludes that INS's prior denial of the Plaintiff's 1999 I–140 Petition constitutes a denial on the merits:

A careful reading [of] the decision of November 24, 2000 [denying the 1999 I–140 Petition] shows [that] the denial focused on the statutory requirements for the first [visa] category of an outstanding professor or researcher. The [INS] had, on September 30, 1999 requested evidence [from] the applicant... to support [his] eligibility as an outstanding professor or researcher. [He] declined to respond to the request and USCIS denied the petition for abandonment on November 24, 2000.

It is a reasonable conclusion to consider the denial of [the 1999 I–140] petition to be a denial based on the merits, and therefore [that petition] cannot be used for grandfathering under [Section] 245(i).

.... It is [therefore] ordered that the motion [to reopen] be dismissed and the original decision denying [the 2009] Form I–485 [Petition] remain undisturbed.

(Id. at 376) The denial letter does not address Plaintiff's arguments relating to the alleged fraud committed by Plaintiff's representative—William Smart—nor does it address Plaintiff's claim that he did not receive the 2000 notice of intent to deny.

## II. PROCEDURAL HISTORY

The Complaint was filed on March 30, 2016. (Dkt. No. 1) Plaintiff claims that USCIS's denial of his 2009 I–485 Applica-

---

9. Plaintiff's motion to reopen also alleges that "Professor William Smart," a/k/a "Professor Willie Williams," fraudulently held himself out as a "counselor at law" who "special-

ize[d] in INS matters." (CAR at 394–95) Plaintiff does not deny that he was aware of the contents of the 1999 I–140 Petition, however. (See id.)

tion "was arbitrary and capricious and . . . contrary to the weight of the evidence." (Id. ¶ 30) Plaintiff contends that USCIS improperly determined that he was not eligible as a "grandfathered alien"—within the meaning of Section 245(i) of the INA, 8 U.S.C. § 1255(i)—based on his 1999 I–140 Petition. (See id.) Plaintiff asks this Court to issue an order "preclude[ing] [Defendants] from denying [Plaintiff] the right to adjust [his] status . . . and . . . approv[ing] [Plaintiff's] application." (Id.)

On October 13, 2016, Defendants moved for summary judgment. Defendants argue that USCIS's decision to deny Plaintiff's 2009 I–485 Application "was not arbitrary or capricious, or otherwise contrary to law," because Plaintiff's 1999 I–140 Petition was not "approvable when filed" and therefore did not qualify Plaintiff as a "grandfathered alien." (See Notice of Motion (Dkt. No. 15); Def. Moving Br. (Dkt. No. 16) at 14)

On August 15, 2017, this Court issued an order directing the parties to submit supplemental letters addressing whether the Court has subject matter jurisdiction. (Aug. 15, 2017 Order (Dkt. No. 20)) The parties submitted letters arguing that subject matter jurisdiction exists because US-CIS's denial of the 2009 I–485 Application "w[as] not grounded in an exercise of agency discretion," but instead constitutes a "non-discretionary eligibility determination[ ] that present[s] purely legal questions." (Sept. 1, 2017 Def. Ltr. (Dkt. No. 23) at 2; Sept. 5, 2017 Pltf. Ltr. (Dkt. No. 24) at 2)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Summary Judgment Standard

▓ Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)).

▓ In deciding a summary judgment motion, the Court " 'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks and citation omitted)). However, a " 'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.' " Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

#### B. Standard of Review Under the APA

Under the APA, "courts review agency actions under a deferential standard, under which such actions may only be disturbed if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'unsupported by substantial evidence.' " Noroozi v. Napolitano, 905 F.Supp.2d 535, 541 (S.D.N.Y.

2012) (quoting 5 U.S.C. § 706(2)(A), (E)); see also Int'l Internship Programs v. Napolitano, 853 F.Supp.2d 86, 96 (D.D.C. 2012) ("Review of final agency action under the APA is highly deferential.").

■ "An agency [action] may be deemed arbitrary, capricious or an abuse of discretion 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Henley v. Food & Drug Admin., 77 F.3d 616, 620 (2d Cir. 1996) (quoting Motor Vehicle Mfrs. Assoc. of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." Karpova v. Snow, 497 F.3d 262, 268 (2d Cir. 2007).

■ "The Court's task is not to 'engage in an independent evaluation of the cold record,' nor to 'substitute its judgment for that of the agency.'" Noroozi, 905 F.Supp.2d at 541 (internal citations omitted). "Instead, it is for the Court to determine whether the agency has 'considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action.'" Id. (quoting J. Andrew Lange, Inc. v. FAA, 208 F.3d 389, 391 (2d Cir. 2000)). Such "[j]udicial deference to the Executive Branch is especially appropriate in the immigration context." See I.N.S. v. Aguirre–Aguirre, 526 U.S.

415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

■ "Where, as here, a party seeks review of agency action under the APA and 'the entire case on review is a question of law,' summary judgment is generally appropriate." Noroozi, 905 F.Supp.2d at 541 (quoting Citizens Against Casino Gambling v. Hogen, No. 07 Civ. 0451, 2008 WL 2746566, at *25 (W.D.N.Y. July 8, 2008)).

## C. Applications for Adjustment of Status under the INA

"Applications for an adjustment of immigration status are governed by the provisions of the INA." Singh v. United States, No. 12 Civ. 5047 (RRM), 2013 WL 3208428, at *2 (E.D.N.Y. June 24, 2013). Pursuant to Title 8, U.S.C. Section 1255(a), "[t]he status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence" if certain criteria are met. See 8 U.S.C § 1255(a). However, where, as here, an alien is present in the United States unlawfully at the time of his application, Section 1255(c) requires the agency to find the alien "ineligible for an adjustment of status." Kar Onn Lee v. Holder, 701 F.3d 931, 934 (2d Cir. 2012) (citing 8 U.S.C. § 1255(c)).

Congress has created a limited exception to this rule—codified at Title 8, U.S.C. Section 1255(i)—permitting an alien to "apply for adjustment of status only if he is 'grandfathered' under 8 U.S.C § 1255(i)(1))." Butt v. Gonzales, 500 F.3d 130, 132 (2d Cir. 2007). Pursuant to the regulations implementing Section 1255(i), an alien may qualify as a "[g]randfathered alien" by showing that, inter alia, he "is the beneficiary ... of ... [a visa] petition for classification under [8 U.S.C. § 1154]

which was properly filed with the Attorney General on or before April 30, 2001, and which was approvable when filed." See 8 C.F.R. § 245.10(a)(1)(i)(A); 8 U.S.C. § 1255(i)(1)(B)(i). One of the classifications under which an alien may petition is as an "[o]utstanding professor[ ] and researcher[ ]." See 8 U.S.C. §§ 1153(b)(1)(B), 1154(a)(1)(F). For an alien seeking eligibility as a "grandfathered alien," an underlying visa petition is "approvable when filed" where "the qualifying immigrant visa petition ... was [1] properly filed, [2] meritorious in fact, and [3] non-frivolous." 8 C.F.R. § 245.10(a)(3).

With respect to the classification for aliens who are "outstanding professors and researchers," the INA and associated regulations provide that "[a]ny employer desiring and intending to employ within the United States an alien entitled to [that] classification ... may file a petition with the Attorney General for such classification." See 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(i)(1). These provisions do not permit an alien to self-petition for this classification, or to be the beneficiary of such a petition filed by anyone other than an employer. See id.

An alien is eligible for the "outstanding professor and researcher" classification if:

(i) the alien is recognized internationally as outstanding in a specific academic area[;]

(ii) the alien has at least 3 years of experience in teaching or research in the academic area[;] and

(iii) the alien seeks to enter the United States—

(I) for a tenured position (or tenure-track position) within a university or institution of higher education to teach in the academic area[;]

(II) for a comparable position with a university or institution of higher education to conduct research in the area[;] or

(III) for a comparable position to conduct research in the area with a department, division, or institute of a private employer, if the department, division, or institute employs at least 3 persons full-time in research activities and has achieved documented accomplishments in an academic field.

8 U.S.C. § 1153(b)(1)(B). "A petition for an outstanding professor or researcher must be accompanied by ... [certain initial evidence including,] [a]n offer of employment from a prospective United States employer" in the education or research field. See 8 C.F.R. § 204.5(i)(3)(iv).

## II. ANALYSIS

### A. Subject Matter Jurisdiction

▮▮▮ "[F]ederal courts are under an independent obligation to examine their own jurisdiction." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). "Although the parties did not brief the issue in their original submissions ..., the Court may examine subject matter jurisdiction, sua sponte, at any stage of the proceeding." F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 100 n.2 (2d Cir. 1999). Here, during the pendency of the instant motion, this Court directed the parties to file supplemental submissions addressing whether the Court has subject matter jurisdiction. (See Dkt. Nos. 20, 23, 24)

▮▮▮ "Although the APA does not itself confer subject matter jurisdiction, the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that 'arises under' a 'right of action' created by the APA. Because Section 1331 confers jurisdiction on the district courts, a suit that arises under the APA is properly brought in district court." Sharkey v.

Quarantillo, 541 F.3d 75, 84 (2d Cir. 2008) (internal citations omitted).

 The APA does not apply, however, where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." See 5 U.S.C. § 701(a). The INA contains one such jurisdiction-stripping provision: Title 8, U.S.C. Section 1252(a)(2)(B)(i). This provision—which has the heading, "Matters not subject to judicial review; Denials of discretionary relief"—provides that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] of this title [.]

8 U.S.C. § 1252(a)(2)(B)(i). Accordingly, "[i]n general, '[Section 1252(a)(2)(B)] eliminates district court jurisdiction to review the denial of an I–485 application' under [Section] 1255." Sandhu v. United States, 916 F.Supp.2d 329, 332–33 (E.D.N.Y. 2013) (quoting Ruiz v. Mukasey, 552 F.3d 269, 276 n. 4 (2d Cir. 2009)).

Courts recognize "two exceptions [to the preclusion of judicial review, however], one statutory and the other judicial." Id. at 333. First, under Section 1252(a)(2)(D), no provision "which limits or eliminates judicial review[ ] shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). Here, however, Plaintiff seeks district court review of a denial of an adjustment of status. Accordingly, this exception does not apply. See Ajlani v. Chertoff, 545 F.3d 229, 235 (2d Cir. 2008) (because Section 1252(a)(2)(D) vests jurisdiction "exclusively in the courts of appeals," district courts

lack jurisdiction to review constitutional or legal challenges to removal proceedings).

 Second, courts have concluded that Section 1252(a)(2)(B)(i) "does not bar judicial review of nondiscretionary, or purely legal, decisions regarding an alien's eligibility for . . . relief." Sepulveda v. Gonzales, 407 F.3d 59, 63 (2d Cir. 2005). That is, while "courts lack jurisdiction to review USCIS's 'factfinding, factor-balancing, and exercise of discretion' under [Section] 1252(a)(2)(B), [they] retain jurisdiction 'to review nondiscretionary decisions regarding an alien's eligibility for . . . relief.' " Sandhu, 916 F.Supp.2d at 333 (internal citations omitted); see also Mantena v. Johnson, 809 F.3d 721, 728 (2d Cir. 2015) ("Although the statute strips jurisdiction over a substantive discretionary decision, section 1252 does not strip jurisdiction over procedural challenges."); Sharkey, 541 F.3d at 85–87 (statute "does not strip the district court of jurisdiction to review" agency action pursuant to "a non-discretionary duty").

Here, Plaintiff argues that he seeks judicial review of "non-discretionary eligibility determinations that present purely legal questions." (Sept. 5, 2017 Pltf. Ltr. (Dkt. No. 24) at 2)

 The Second Circuit has explained that "[o]btaining . . . adjustment of status . . . is a two-step process." Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir. 2006).

> First, an alien must prove eligibility by showing that he meets the statutory eligibility requirements. Second, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief.

Id. (internal citations omitted). Agency determinations "regarding an alien's [statutory] eligibility for . . . relief" constitute

"nondiscretionary, or purely legal, decisions" which may be reviewed by a district court. See Sepulveda, 407 F.3d at 63. Accordingly, this Court has subject matter jurisdiction to consider Plaintiff's claim that USCIS improperly determined that he was not eligible for an adjustment of status pursuant to the "grandfathered alien" exception set forth in 8 U.S.C. § 1255(i). To the extent that Plaintiff asks this Court to order USCIS to approve his application (see Cmplt. (Dkt. No. 1) at 6), however, his request implicates discretionary agency decision-making and exceeds the scope of this Court's subject matter jurisdiction.

Because this Court has jurisdiction to consider Plaintiff's "statutory eligibility" for relief, it will review USCIS's denial of Plaintiff's 2009 I–485 Application for the purpose of determining whether USCIS's eligibility determination was arbitrary, capricious, or contrary to law.

## B. Review of USCIS's Denial of Plaintiff's 2009 I–485 Application

█ This Court must determine "whether the record supports USCIS's determination that the 1999 [I–140] [P]etition was not 'approvable when filed' because it was not 'meritorious in fact.'" (Def. Moving Br. (Dkt. No. 16) at 14; see also Pltf. Opp. Br. (Dkt. No. 14) at 22–28)

In moving for summary judgment, Defendants argue that USCIS's decision to deny Plaintiff's 2009 I–485 Petition was "not arbitrary or capricious, or otherwise contrary to law," because Plaintiff's 1999 I–140 Petition was not "approvable when filed," and therefore did not render Plaintiff eligible as a "grandfathered alien" under 8 U.S.C. § 1255(i). (See Def. Moving Br. (Dkt. No. 16) at 14–19) Defendants contend, inter alia, that Plaintiff's 1999 I–140 Petition was not "meritorious in fact," because a visa petition premised on the classification of "outstanding professor or

researcher" must be filed by an employer, and cannot be filed through "self-petition[ing]." (Id. at 17; see also Def. Reply Br. (Dkt. No. 17) at 2)

It is undisputed that Plaintiff is not eligible for an adjustment of status under 8 U.S.C. § 1255(a), because of his failure to maintain lawful status in the United States since his entry in 1998. There is likewise no dispute that—in order to obtain approval for his 2009 I–485 Application—Plaintiff was required to demonstrate that he is "the beneficiary . . . of . . . [a visa] petition . . . which was properly filed with the Attorney General on or before April 30, 2001, and which was approvable when filed." (See Def. Moving Br. (Dkt. No. 16) at 14; Pltf. Opp. Br. (Dkt. No. 14) at 22–23) See also 8 C.F.R. § 245.10(a)(1)(i)(A); 8 U.S.C. §§ 1255(a), 1255(i). In order to be "approvable when filed," the 1999 I–140 Petition must have been "meritorious in fact." 8 C.F.R. § 245.10(a)(3).

█ The phrase "meritorious in fact" is not defined in the regulations. The Bureau of Immigration Appeals ("BIA") has interpreted the requirement as meaning that "a visa petition 'merited a legal victory' upon filing." See Matter of Butt, 26 I. & N. Dec. 108, 115 (BIA 2013). The BIA considers

> whether the visa petition would have been approved had it been adjudicated on the date it was filed, notwithstanding the fact that it may (1) remain unadjudicated at some future date or (2) have been denied, withdrawn, or revoked as a result of subsequent events (for example, a divorce between the alien and the petitioning spouse, the marriage of an unmarried alien child where the child's single status is critical to approval of the petition, or the closing of a petitioning business, which rendered it unable to offer the alien employee a job under the employment-based visa petition).

Id. (citations omitted); see also Ogundipe v. Mukasey, 541 F.3d 257, 261 (4th Cir. 2008) (holding "that a visa petition is meritorious in fact for purposes of grandfathering ... if, based on the circumstances that existed at the time the petition was filed, the beneficiary of the petition qualified for the requested classification"); Matter of Riero, 24 I. & N. Dec. 267, 268 (BIA 2007) (for a marriage-based visa petition to be "meritorious in fact," the petition must be based on a "bona fide" and "genuine marriage in which the parties intended to share a life as husband and wife, not a marriage of convenience designed solely to confer an immigration benefit on one of the parties").

Having considered the statute, the applicable regulations, and the precedents discussed above, this Court concludes that USCIS's denial of Plaintiff's 2009 I–485 Application was not arbitrary or capricious, or otherwise contrary to law.

The record demonstrates that Plaintiff's 1999 I–140 Petition did not "merit[ ] a legal victory" upon filing. Id. As an initial matter, Plaintiff self-petitioned for a visa under the classification of "outstanding professor or researcher" (CAR at 338–39), and the INA and accompanying regulations do not permit self-petitioning in connection with that classification. Instead, "[a]ny United States employer desiring and intending to employ a professor or researcher who is outstanding in an academic field under section 203(b)(1)(B) of the Act may file an I–140 visa petition for such classification."[10] See 8 C.F.R.

§ 204.5(i)(1); 8 U.S.C. §§ 1153(b)(1)(B), 1154(a)(1)(F).

In addressing Plaintiff's 1999 I–140 Petition, the INS issued an October 2, 2000 notice of intent to deny the petition stating that

[t]he beneficiary [i.e. Plaintiff] filed the petition. Only U.S. employers, who conform to the requirements specified in section 203(b)(1)(B) of the INA and Title 8, Code of Federal Regulations, Part 204.5(i)(3) may file for aliens under this classification.

(CAR at 335) After Plaintiff failed to "[s]ubmit a completely executed Form 1–140 signed by an authorized official of the U.S. employer that intends to permanently employ the beneficiary," the INS denied Plaintiff's 1999 I–140 Petition on November 24, 2000. (Id. at 332, 335)

It is undisputed that Plaintiff's 1999 I–140 Petition was not filed by a sponsoring United States employer. And although Plaintiff's 1999 I–140 Petition claims full-time employment with "Colombia University" as a researcher (see id. at 339), there is no evidence that Plaintiff had an offer of employment from—much less a bona fide employment relationship with—an educational institution. To the contrary, it is apparent that Plaintiff's 1999 I–140 Petition contains false information about Plaintiff's employment (see id. at 213–15), and Plaintiff does not contend otherwise. These deficiencies alone support USCIS's determination that—as a non-discretionary matter—Plaintiff's 1999 I–140 Petition was not

---

10. In this regard, it is noteworthy that the regulatory language used for the "outstanding professor or researcher" classification is different than the language used for the "aliens with extraordinary ability" classification. The latter exception provides that "[a]n alien, or any person on behalf of the alien, may file an I–140 visa petition." No submission from an employer is required. See 8 C.F.R.

§§ 204.5(h)(1); 8 U.S.C. § 1154(a)(1)(E), (F); see also Hamdan v. Rumsfeld, 548 U.S. 557, 578, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) ("A familiar principle of statutory construction[] ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

"meritorious in fact" and thus was not "approvable when filed."

In an effort to escape this result, Plaintiff raises a number of arguments based on the alleged fraudulent conduct of his representative, William Smart. (See Pltf. Opp. Br. (Dkt. No. 14) at 22–36) In making these arguments, Plaintiff asks this Court to go beyond the narrow, non-discretionary legal issue over which it has jurisdiction—whether the 1999 I–140 Petition, as submitted, was "meritorious in fact" and "approvable when filed."

For example, Plaintiff argues that he was the "victim" of a fraud perpetrated by Smart, and asserts that he did not receive either the notice of intent to deny his 1999 I–140 Petition or the subsequent denial letter. (See id. at 9–12, 22, 27–28) According to Plaintiff, "had [he] known of the [notice of intent to deny] in October 2000, he [would have] had sufficient opportunity to modify his application ... [or] submit an entirely new application through a legitimate attorney prior to [the grandfathering deadline] of April 30, 2001." (Id. at 28) These arguments have no bearing on the non-discretionary legal issue before the Court, however, and do not address the dispositive facts: Plaintiff's 1999 I–140 Petition was not submitted by a U.S. employer, and that petition does not evince a bona fide employment relationship with a U.S. employer. Plaintiff was also aware—at the time he signed the petition—that no U.S. employer was submitting the petition and that he had no bona fide employment relationship with a U.S. employer. Plaintiff cites no law suggesting that a representative's fraud excuses a deficient application, particularly where the applicant is aware

that the representative has made fraudulent statements in the applicant's visa petition.

Plaintiff also contends that INS knew of Smart's fraudulent conduct at the time it issued the October 2000 notice of intent to deny, and did not take steps to ensure that Plaintiff would receive the notice and be given an opportunity to supplement his visa petition. (See id. at 13, 28–29) According to Plaintiff, it was "wrong [for INS] to assume that the [notice of intent to deny]—which discloses that [Smart] is a non attorney and likely fraud—would be given ... to [Plaintiff]." (Id. at 29) There no evidence, however, that INS was aware of Smart's role in visa fraud at the time it sent the notice of intent to deny, or the denial letter, to the address listed on Plaintiff's application. The notice of intent to deny states only that "[t]he individual listed as your representative has not been shown to be an attorney or an accredited representative before this Service," and asks for documentary evidence of Smart's credentials. (CAR at 335) The record suggests that INS became aware that Smart had committed fraud in connection with Plaintiff's 1999 I–140 Petition on July 26, 2001—months after the formal denial letter—when investigators contacted Plaintiff about his petition. (Id. at 213–15) In any event, this argument likewise does not address the facial deficiencies in Plaintiff's petition.[11]

Finally, Plaintiff argues that the record contains ample evidence of his credentials as a medical practitioner, and demonstrates that Plaintiff was qualified for a visa. (See Pltf. Opp. Br. (Dkt. No. 14) at

---

11. Plaintiff also contends that the I–140 Form is misleading, because it contains an option for "self" as a type of employer, and does not provide clear instructions. (Pltf. Opp. Br. (Dkt. No. 14) at 32–33) The record shows, however, that the I–140 Form's entries were completed by Smart; Plaintiff only signed the

forms. (CAR at 215, 394–95) Accordingly, even if the I–140 Form would have been confusing for Plaintiff, that issue is irrelevant, because he did not complete the entries. Moreover, there is no evidence that Smart was confused by the I–140 Form.

28, 32–36) Plaintiff's 1999 I–140 Petition was, however, premised on the contention that he qualified for classification as an "outstanding professor or researcher"; that he had a sponsoring U.S. employer; and that he had a bona fide employment relationship with a U.S. employer. In reality, Plaintiff satisfied none of these requirements. As a result, his 1999 I–140 Petition was neither "meritorious" nor "approvable when filed." While Plaintiff argues that—based on his credentials—he could have qualified under other classifications (see id. at 28–36), these arguments are irrelevant to the merits of the I–140 petition that Plaintiff actually filed.[12]

\* \* \* \*

The Court concludes that USCIS's denial of Plaintiff's 2009 I–485 Application—which was based on the agency's determination that Plaintiff was not eligible as a "grandfathered alien," because his 1999 I–140 Petition was not "meritorious in fact" and "approvable when filed"—was not arbitrary or capricious, or contrary to law. "Where, as here, an agency's determination cannot be characterized as arbitrary, capricious, . . . or contrary to law, the APA precludes [the court] from substituting [its] judgment for that of the agency." Henley, 77 F.3d at 621.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motion (Dkt. No. 15) and to close this case.

SO ORDERED.

---

12. In opposing Defendants' motion for summary judgment, Plaintiff raises arguments not presented to USCIS. For example, Plaintiff contends that he was "eligible to adjust his status . . . [as] the beneficiary of a . . . visa petition filed by his wife before April 30, 2001." (Pltf. Opp. Br. (Dkt. No. 14) at 28) Plaintiff also contends that Smart provided ineffective assistance of counsel in not filing Plaintiff's visa petition under another classification. (Id. at 28–36) These arguments were not presented to USCIS in connection with Plaintiff's 2009 I–485 Application, however, and therefore cannot be considered here. See Fernandez v. Apfel, No. 97 Civ. 6936 (AJP) (LAP), 1998 WL 603151, at \*14 (S.D.N.Y. Sept. 11, 1998) ("It is beyond cavil that a petitioner's failure to assert an argument before an administrative agency bars [petitioner] from asserting that argument for the first time before a reviewing court.").